# Illinois Official Reports

## Appellate Court

***People v. Breeden*, 2014 IL App (4th) 121049**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS BREEDEN, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-1049 |
| Filed<br>Rehearing denied | November 25, 2014<br>January 7, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for failure to register as a sex offender and sentence to 58 months' imprisonment were upheld on appeal, notwithstanding defendant's contentions that his sentence was too severe, since the sentence did not constitute an abuse of discretion in view of defendant's criminal history and his failure to attend a court-ordered sex offender risk assessment, but the mandatory fines imposed by the circuit clerk were vacated and the cause was remanded to the trial court with directions to directly impose any mandatory fines with the application of any monetary credit to which defendant is entitled. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 10-CF-63; the Hon. Thomas J. Difanis, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded with directions. |

Counsel on Appeal

Michael J. Pelletier, Jacqueline L. Bullard, and Daaron V. Kimmel, all of State Appellate Defender's Office, of Springfield, for appellant.

Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, David J. Robinson, and Kathy Shepard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justice Knecht concurred in the judgment and opinion.
Presiding Justice Appleton concurred in part and dissented in part, with opinion.

## OPINION

¶ 1    The trial court sentenced defendant, Thomas Breeden, to 58 months' imprisonment for failure to register as a sex offender (730 ILCS 150/6 (West 2008)). Defendant appeals, arguing the sentence is too severe. We do not find the sentence to be an abuse of discretion.

¶ 2    The State points out that three of the monetary assessments in this case are void because the circuit clerk, rather than a judge, imposed them and because case law regards them as fines. These are the assessments of $10 for the arrestee's medical expenses (730 ILCS 125/17 (West 2008)), $10 for State Police services (705 ILCS 105/27.3a(1.5), (5) (West 2010)), and $5 for the drug court program (55 ILCS 5/5-1101(f) (West 2008)). The State further points out that a fourth assessment, a fine of $255 under section 10 of the Sex Offender Registration Act (730 ILCS 150/10 (West 2008)), is void because even though a judge imposed it, the fine is less than the minimum amount of $500 that section 10 requires. Defendant agrees with the State's arguments regarding these four fines, and so do we.

¶ 3    Therefore, we vacate those four fines and remand this case to the trial court with directions to calculate and directly impose any mandatory fines, including a sex offender registration fine in the amount of $500, applying any monetary credit to which defendant is entitled. Otherwise, we affirm the trial court's judgment.

### I. BACKGROUND

#### A. The Original Charge

¶ 4

¶ 5

¶ 6    On January 15, 2010, the State filed an information against defendant in Champaign County, charging that on or about October 5, 2009, he violated section 6 of the Sex Offender Registration Act (730 ILCS 150/6 (West 2008)) in that, being a "sex offender" within the meaning of section 2(A) (730 ILCS 150/2(A) (West 2008)), he failed to "register in person with the new agency of jurisdiction" within three days after changing his residence.

¶ 7                                          B. The Negotiated Guilty Plea

¶ 8        In a hearing on April 27, 2010, defendant said he wanted to plead guilty to the charge of failing to register as a sex offender. The trial court admonished him, telling him, among other things, the minimum and maximum punishments for the offense. The court said:

> "THE COURT: This is a Class 3 felony.
>
> Standard penalty range, counsel?
>
> MR. KANIS [(prosecutor)]: Standard range.
>
> THE COURT: Means you can be sent to prison for not less than two, nor more than five years, followed by a period of mandatory supervised release of one year. Maximum fine could be up to 25 thousand dollars."

¶ 9        After confirming with defendant that he understood all the rights he would be giving up by pleading guilty and that he was pleading guilty of his own free will, the trial court asked counsel if there were any agreements. An assistant State's Attorney, Chris Kanis, replied:

> "MR. KANIS: Your Honor, in exchange for Defendant's plea of guilty to Count I, be sentenced to probation for a period of 24 months. Serve 18 days in the county correctional center. Credit for nine days served, making this a time-served plea. Pay a fine of three hundred dollars and court costs. A local anticrime assessment fee of ten dollars. Violent Crime Victims Assistance Act Fee. Probation service fee to be set by the Court. Genetic marker grouping analysis fee of two hundred dollars. Total 45 dollars credit against any fines for time spent in custody. And comply with [deoxyribonucleic acid (DNA)] reporting requirements and statute.
>
> THE COURT: Ms. Propps [(defense counsel)], is that the agreement?
>
> MS. PROPPS: Yes, Your Honor.
>
> THE COURT: Mr. Breeden, is that the agreement that you have with the State?
>
> DEFENDANT: Yes, sir."

¶ 10       In response to the trial court's queries, defendant denied anyone had promised him anything else, and he denied he had been forced or threatened. Upon defendant's reaffirmation of his desire to plead guilty to the charge of failure to register as a sex offender, the court accepted his guilty plea.

¶ 11       The trial court proceeded immediately to sentencing. After hearing the prosecutor's brief summary of defendant's criminal record, the court imposed the following sentence:

> "THE COURT: We'll show the Defendant is sentenced to a period of probation for 24 months, subject to the standard conditions which will include 18 days in custody with credit for nine served. He has the monetary obligations due and owing, with a probation service fee fixed in the amount of 15 dollars per month.
>
> If he's not already done so, he'll submit specimens of blood, saliva, or tissue to the Department of State Police."

¶ 12       The written sentencing order, dated and entered the same day, incorporated the terms of the plea agreement and stated the probation service fee would be $15 per month, but it did not specify the amount of the Violent Crime Victims Assistance fee. The order required defendant to "pay all fines, fees and costs as authorized by statute" and to pay all financial obligations within 180 days.

¶ 13 A docket entry dated the same day, April 27, 2010, said: "Fine + Cost Fee $1604.55 Signed Judge DIFANIS THOMAS J." In addition to the 24 months of probation; the 18 days in jail; the credit for 9 days; and the submission of blood, saliva, and tissue specimens, the docket entry imposed the following monetary assessments:

| | |
|---|---|
| "Fine + Cost | 519.55 |
| PROBATION MONITORIN | 360.00 |
| PUBLIC DEFENDER | 450.00 |
| ST POLICE SERVICES | 10.00 |
| CRIME STOPPERS | 10.00 |
| STATE OFFENDER DNA | .00 |
| SEXUAL OFFENDER REG | 255.00." |

¶ 14 The record contains a printout from the offender DNA database of the Illinois State Police. According to the printout, defendant had already submitted a DNA specimen. He did so on June 2, 1997.

¶ 15 C. The Revocation of Probation

¶ 16 On April 23, 2012, the State filed a petition to revoke defendant's probation. According to the petition, one of the conditions of probation was that he refrain from violating any criminal statute. The petition alleged that on April 3, 2012, he violated this condition by violating two subsections of section 11-9.4-1 of the Criminal Code of 1961 (720 ILCS 5/11-9.4-1 (West 2010)). He allegedly violated subsection (b) (720 ILCS 5/11-9.4-1(b) (West 2010)) by knowingly being present in a public park, Lincoln Park, in Danville. He allegedly violated subsection (c) (720 ILCS 5/11-9.4-1(c) (West 2010)) by knowingly loitering on a public way within 500 feet of Lincoln Park. (Even though the violation of probation occurred in Vermilion County, the Champaign County circuit court has jurisdiction because the original offense of failure to register as a sex offender occurred in Champaign County.)

¶ 17 On August 1, 2012, the trial court held a hearing on the State's petition to revoke probation. Defense counsel told the trial court "this [was] going to be an admission and stipulation." After admonishing defendant and confirming that his admission was voluntary (see Ill. S. Ct. R. 402A(a), (b) (eff. Nov. 1, 2003)), the court said it was ready to hear the factual basis (see Ill. S. Ct. R. 402A(c) (eff. Nov. 1, 2003)).

¶ 18 The prosecutor represented that the evidence would show the following. Around April 3, 2012, defendant was in the process of trying to buy a car from Wright Motors, a retail merchant in Danville. Wright Motors had lent him a vehicle to use temporarily, pending the sale. The sale fell through, and Wright Motors requested defendant to give back the vehicle it had lent him. In telephone conversations with Wright Motors, defendant falsely said that he was in Bloomington and that he was unable to return the vehicle. One of the managers of Wright Motors, a man named Carter, went to Lincoln Park to pick up his three-year-old son, and he noticed the loaner vehicle parked in a parking lot within 500 feet of the park. He approached the vehicle and saw defendant sitting inside it. Carter called two other employees of Wright Motors, who then repossessed the vehicle from defendant. Someone also called the police, and the police arrived and placed defendant under arrest. Defendant admitted he had lied to Wright Motors about his location, and he admitted being in the park.

- 4 -

¶ 19 The trial court asked defense counsel if she believed the State had witnesses who, if called, would testify substantially as indicated in the factual basis. Defense counsel answered yes. The court accepted defendant's admission and stipulation to the allegations in the petition to revoke probation, and the court revoked his probation. The court also ordered a presentence investigation report and a sex offender evaluation.

¶ 20                                         D. The Presentence Investigation Report

¶ 21 A probation officer, Jeremy M. Jessup, wrote a presentence investigation report, dated September 24, 2012. According to the report, defendant was 46 years old. He had an eleventh-grade education and lacked a general equivalency diploma. He was currently unemployed because of an injury, torn ligaments and tendons in his right ankle, which disabled him from walking on an incline of 45 degrees or more. From March 2007 to November 2011 he worked as a grain mover until his employer fired him because of the limitations imposed by his ankle injury. From 2005 to 2007 he worked through Labor Ready. He was now surviving on food stamps. He had not applied for disability because he preferred to be employed.

¶ 22 Defendant had the following previous felony convictions. In September 1989, the La Salle County circuit court sentenced him to two years' imprisonment for forgery and three years' imprisonment for violation of bail bond. In July 1997, the McLean County circuit court sentenced him to two consecutive terms of nine years' imprisonment for two counts of predatory criminal sexual assault of a child.

¶ 23 Also, from October 1989 to May 1997, defendant was convicted and sentenced 14 times for driving while his driver's license was suspended. In April 1996, the McLean County circuit court sentenced him to 24 months' probation for misdemeanor domestic battery. The court revoked this probation because of his commission of a new offense, *i.e.*, driving while his driver's license was suspended, and resentenced him to 240 days in jail, with credit for 240 days. The probation was "terminated unsuccessfully."

¶ 24 Jessup wrote:

"To date, [defendant] has been sentenced to terms of incarceration in either the Illinois Department of Corrections or local county jails on 11 occasions including the jail term imposed in this case. He has also been afforded community-based sentences of Conditional Discharge or Probation on seven occasions. Although records were difficult to locate and limited due to the age of many of the convictions, it appears the defendant failed to comply with conditions, financial in many cases, in all of the community-based sentences."

¶ 25 Because defendant continued to reside in Danville, the Vermilion County probation officer, Patrina Smith, agreed in May 2010 to provide "courtesy supervision" while defendant served his 24-month probation for failure to register as a sex offender. Jessup wrote:

"All progress reports were positive until 4/03/12 when the defendant was arrested by Danville Police for being present in a public park while children were present. On 9/12/12, this officer spoke with Officer Smith via telephone. Officer Smith indicated the defendant's compliance was problematic around April 2012 to include missing scheduled office visits and home visits. However, since approximately May 2012, his compliance and performance has [*sic*] improved and she currently has no compliance problems with him."

¶ 26        Defendant missed his appointment, however, for a sex offender risk assessment. Jessup wrote:

> "The defendant has never participated in Sex Offender Treatment. He was ordered to obtain a Sex Offender Risk Assessment pursuant to this matter. This officer directed the defendant in writing to meet with Michael Kleppin at the Court Services Office, at no cost to the defendant, on 8/24/12 at 9:00 am. [Defendant] contacted this officer on 9/18/12[,] acknowledging he failed to keep the 8/24/12 appointment with Mr. Kleppin. He was provided Mr. Kleppin's contact information and instructed to contact him directly to reschedule."

As of the date of the report, Jessup had "no information verifying the defendant ha[d] in fact rescheduled with Mr. Kleppin."

¶ 27        Later, on September 24, 2012, in an addendum to the presentence investigation report, Jessup wrote:

> "On 9/19/12, this officer was able to verify with Mr. Kleppin that [defendant] had contacted him and rescheduled the assessment. It is this officer's understanding the meeting with Mr. Kleppin is now set for 10/09/12 at 9:00 am at the Court Services Office. This officer anticipates the Sex Offender Risk Assessment report would be available in mid to late November 2012 provided [defendant] keeps the 10/09/12 appointment."

¶ 28                                         E. The Resentencing Hearing

¶ 29        On September 24, 2012, the trial court held a hearing for the purpose of resentencing defendant for the original offense of failing to register as a sex offender.

¶ 30        An assistant State's Attorney, Troy Lozar, recommended imprisonment for 48 months, considering defendant's criminal history, his lie to Wright Motors, and his failure to attend the appointment with Kleppin.

¶ 31        Defense counsel, Jamie Propps, recommended another community-based sentence. She observed:

> "MS. PROPPS: Your Honor, first and foremost, my client did take responsibility in pleading guilty to the original offense and, once again, by stipulating to the petition to revoke.
>
> I would also ask the Court to note that my client has only been admonished with regard to standard range sentencing in this case as opposed to extended term sentencing.
>
> MR. LOZAR: If that is the case, then I will retract my recommendation, Judge, and recommend 36. I am sorry. Excuse me. Counsel is correct, and I apologize for interrupting. It remains 48 for two to five. My apologies to both counsel and to the court."

¶ 32        Most of defendant's criminal history consisted of traffic offenses, defense counsel argued, and except for the original offense in 2010, the felony convictions were old. Other than some noncompliance in April 2012, when defendant was arrested for being in a public park, the probation officer in Vermilion County had experienced no problems with him. Despite his ankle injury, defendant chose to work instead of applying for disability, and defense counsel presented a letter from David McGarvey of Sweep-a-Lot stating that since September 14,

2012, defendant had in fact been working at least 40 hours a week as a sweeper driver. Although defense counsel admitted that defendant had no excuse for missing his appointment with Kleppin, he had rescheduled the appointment, and he had faithfully attended his interview with Jessup.

¶ 33    Defendant made a statement in allocution, apologizing for being in the park. He added: "I mean there is circumstances, but they was–I was there. And I always try to put my best foot forward, and I know I haven't in the past, but I'm just trying to do the right thing."

¶ 34    The trial court found no statutory mitigating factor, but it found three nonstatutory mitigating factors: (1) defendant had pleaded guilty to the charge of failing to register as a sex offender, (2) he had admitted the petition to revoke his probation, and (3) he had been gainfully employed.

¶ 35    The trial court found two statutory aggravating factors: (1) defendant's criminal history and (2) the need to deter other sex offenders from failing to register.

¶ 36    The original offense, for which defendant was being resentenced–failure to register as a sex offender–remained a "probational offense" even after his admitted violation of probation. Therefore, the court observed, it was "obligated to consider a community-based sentence as the first alternative." The court said:

> "The court has to consider the circumstances surrounding the offense, that would be failure to register, the history, character and condition of the defendant, and the court has to make a call as to whether or not he needs to be incarcerated because he's dangerous.
>
> That is not an easy call under these circumstances. He is a convicted sex offender, two counts of predatory sexual assault. He was found in a public park when he shouldn't have been there.
>
> But at this point it's questionable whether or not he needs to be incarcerated because he's dangerous. He is not likely to mug somebody on the street. He is not likely to commit an armed robbery, but the fact remains the offense that required him to register was an incredibly serious offense.
>
> The other factor that the court has to consider is would a further community-based sentence deprecate the seriousness of his conduct and be inconsistent with the ends of justice.
>
> The presentence report provides the court I believe with ample opportunity to judge his rehabilitative potential at this point. The 14 convictions for driving under suspension indicate that during that period of time that he started that, in '89, and his last driving under suspension was in '97, which was then followed by an 18-year period of incarceration to the Department of Corrections, that certainly did take him from behind the wheel and cease those type of offenses.
>
> When you have 14 convictions for driving under suspension, that tells the court loudly and clearly that you really don't care about the law, [']I know I am not supposed to drive but I will, I know I shouldn't be in a public park but I will.[']
>
> And at this point I believe a further community-based sentence would deprecate the seriousness of his conduct, be inconsistent with the ends of justice. It would not pose the appropriate deterrent factor for other sex offenders who are required to register.

Therefore, I am going to sentence this defendant to a period of incarceration in the Illinois Department of Corrections. It will be for a period of 58 months. He will get credit for thirteen days heretofore served in the Champaign County Correctional Center. The defendant will also get credit for $65 for time spent in custody."

¶ 37 The written sentencing order, entered the same day, September 24, 2012, says nothing about monetary obligations, except that defendant was to "pay costs of prosecution herein." Nor does it say anything about monetary credit.

¶ 38 A docket entry for that date says in part: "Cost Only Fee $382.00 Signed Judge DIFANIS THOMAS J" and "Fines and/or Cost/Penalties and Fees In Force."

¶ 39 The record includes printouts from the circuit clerk listing additional assessments against defendant. Among them are $10 for "Arrestee's Medical," $10 for "St Police Services," and $5 for "drug court program."

¶ 40                                F. The Motion To Reduce the Sentence

¶ 41 On September 26, 2012, defendant filed a motion to reduce the sentence. For essentially four reasons, he argued the sentence of 58 months' imprisonment was too severe. First, although he had been unemployed for a substantial time between 2009 and 2011 because of his work-related injury, he had recently obtained gainful employed and was employed full-time as of the date of the sentencing hearing. Second, his criminal history consisted mostly of "traffic or property offenses or offenses that [were] over ten years old." Third, failure to register as a sex offender was a nonviolent crime. Fourth, all probation progress reports from April 27, 2010, to April 3, 2012, were positive.

¶ 42 In a hearing on November 9, 2012, the trial court denied the motion to reduce the sentence.

¶ 43 This appeal followed.

¶ 44                                         II. ANALYSIS

¶ 45                                  A. The Severity of the Sentence

¶ 46 We should disturb a sentence only if we find it to be an abuse of discretion. *People v. Perruquet*, 68 Ill. 2d 149, 153 (1977). This is the most deferential standard of review known to the law. *People v. Crane*, 195 Ill. 2d 42, 50 (2001). To be an abuse of discretion, a decision must be clearly illogical, arbitrary, unreasonable, contrary to law, or not the product of conscientious judgment. *People v. Covington*, 395 Ill. App. 3d 996, 1002-03 (2009). Even if we ourselves would have given more weight to the mitigating factors and less weight to the aggravating factors if we were the trial court, that fact would not be enough to justify interfering with the trial court's sentencing decision. *People v. Alexander*, 239 Ill. 2d 205, 213 (2010); *People v. Coleman*, 166 Ill. 2d 247, 261-62 (1995). Rather, the sentence would have to be outside "the bounds of reason." (Internal quotation marks omitted.) *Covington*, 395 Ill. App. 3d at 1002-03.

¶ 47 Defendant contends that, for five reasons, it was an abuse of discretion to impose upon him a prison sentence of 58 months, a length of time only two months less than the statutory maximum. See 730 ILCS 150/10(a) (West 2010) (failure to register as a sex offender is a Class 3 felony); 730 ILCS 5/5-4.5-40(a) (West 2010) ("The sentence of imprisonment shall be a determinate sentence of not less than 2 years and not more than 5 years [(60 months)].").

¶ 48    First, according to defendant, the trial court "call[ed] it 'questionable' whether [he] should receive a sentence of probation or incarceration in the first place." Actually, that is not what the court said. Defendant has edited out an important qualifier, the clause "because he's dangerous." The court said:

> "[T]he court has to make a call as to whether or not he needs to be incarcerated because he's dangerous.
>
>    That is not an easy call under these circumstances. ***
>
>    But at this point it's questionable whether or not he needs to be incarcerated because he's dangerous."

Although the court was ambivalent as to whether defendant was dangerous enough to imprison, the court did not appear to be ambivalent about other rationales for imprisoning him, namely, to accomplish justice, to deter others, and to prevent the offense of failure to register as a sex offender from being regarded as less serious than it is.

¶ 49    Second, defendant argues his nonviolent conduct was not egregious enough to warrant 58 months' imprisonment. But *every* failure to register as a sex offender is nonviolent. It is a nonviolent offense. Nevertheless, in the opinion of the legislature, 58 months' imprisonment is within the range of a fitting punishment for this offense. See 730 ILCS 150/10(a) (West 2010); 730 ILCS 5/5-4.5-40(a) (West 2010).

¶ 50    Third, defendant claims that "the prosecutor's recommendations of 36 to 48 months' prison time," while not binding on the trial court (*People v. Stidham*, 178 Ill. App. 3d 643, 648 (1989)), "provide a useful indicator that the lower court's imposed sentence of 58 months was inappropriately severe." Defendant cites no authority for that claim, which is hard to square with what we said in *People v. Nussbaum*, 251 Ill. App. 3d 779, 782-83 (1993): "[T]his court's analysis of whether the trial court abused its discretion in its sentencing will *** not be affected by the sentences the parties recommended to the trial court. *** We hold that counsels' recommendations are deserving of whatever weight the sentencing court wishes to accord them and nothing more."

¶ 51    Fourth, defendant points out that his criminal history "consisted of traffic or property offenses that were over ten years old." While this is accurate, the trial court had to consider his habits, mentality, and general moral character (see *People v. Calhoun*, 404 Ill. App. 3d 362, 385 (2010)), and arguably, 14 convictions of driving while one's driver's license is suspended reveal a contemptuous attitude toward the law. Also, the age of the previous convictions could be explainable partly by his long imprisonment for predatory criminal sexual assault of a child, during which he was under the supervision of correctional officers.

¶ 52    Fifth, there were some mitigating factors, namely, defendant's guilty plea, his admission of the petition to revoke probation, and his work history. The trial court, however, explicitly took those factors into account, and if the trial court decided they deserved only a little weight, we do not see how we could rightfully gainsay the trial court in that regard. See *Alexander*, 239 Ill. 2d at 213; *Coleman*, 166 Ill. 2d at 261-62.

¶ 53    In sum, when we consider defendant's criminal history together with his failure to attend the court-ordered sex offender risk assessment, we are unable to say the trial court abused its discretion by imposing a statutorily authorized sentence of 58 months' imprisonment.

¶ 54                                           B. Fines That Are Void

¶ 55        The State points out that some of the assessments the circuit clerk imposed on defendant are fines. The State cites *People v. Williams*, 2013 IL App (4th) 120313, ¶¶ 18, 21, for the proposition that $10 for the "Arrestee's Medical" (730 ILCS 125/17 (West 2008)) and $10 for "St Police Services" (705 ILCS 105/27.3a(1.5), (5) (West 2010)) are fines. The State cites *People v. Rexroad*, 2013 IL App (4th) 110981, ¶ 53, for the proposition that $5 for the "Drug Court Program" is a fine as well because defendant did not participate in the drug court. The State observes that the circuit clerk lacks authority to impose fines, as the appellate court held more than 25 years ago and has continued holding ever since. See *People v. Chester*, 2014 IL App (4th) 120564, ¶ 33 (citing cases). A fine imposed by a circuit clerk, instead of a judge, is void. *People v. Montag*, 2014 IL App (4th) 120993, ¶ 37.

¶ 56        The State further argues that because the fine in the amount of $255 for "Sexual Offender Reg" is less than the minimum fine of $500 required by the statute (730 ILCS 150/10(a) (West 2008)), that fine is void as well (see *People v. Montiel*, 365 Ill. App. 3d 601, 605-06 (2006)).

¶ 57        Defendant agrees with the State regarding these four fines. He also agrees with the State's suggested remedy: we should remand this case to the trial court with directions to calculate and directly impose any mandatory fines, including a sex offender registration fine in the amount of $500, applying any monetary credit to which defendant is entitled. See *People v. Chester*, 2014 IL App (4th) 120564, ¶ 37.

¶ 58                                           III. CONCLUSION

¶ 59        For the foregoing reasons, we vacate the fines labeled "Arrestee's Medical," "St Police Services," "Drug Court Program," and "Sexual Offender Reg," and we remand this case to the trial court with directions to calculate and directly impose any mandatory fines, including a sex offender registration fine in the amount of $500, applying any monetary credit to which defendant is entitled. Otherwise, we affirm the trial court's judgment.

¶ 60        Affirmed in part and vacated in part; cause remanded with directions.

¶ 61        PRESIDING JUSTICE APPLETON, concurring in part and dissenting in part.

¶ 62        While I concur with the majority's decision as far as it goes, I write separately to address what the majority has omitted from its decision. Although the majority addresses the four void fines the State points out in its brief, the majority is silent about other void or omitted fines. Statutory law positively requires the imposition of these other fines, of which the majority does not speak. Under binding supreme court decisions, I feel duty-bound to dissent from that omission. This court has an independent duty to review the totality of the trial court's sentencing order and to correct the sentencing order insomuch as it fails to conform to statutory law, regardless of whether the parties have specified a particular fine, fee, or cost to be reviewed.

¶ 63　　　　　　　　A. Our Independent Duty To Correct Sentencing Orders
　　　　　　　　　　　That Omit Statutorily Required Fines

¶ 64　　　　Even though, as a rule, reviewing courts should abstain from raising errors *sua sponte* (*People v. Perkins*, 367 Ill. App. 3d 895, 906 (2006)), there is an exception to that rule when it comes to void sentences. "A sentence which does not conform to a statutory requirement is void." *People v. Arna*, 168 Ill. 2d 107, 113 (1995). "A court does not have authority to impose a sentence that does not conform with statutory guidelines [citations] and a court exceeds its authority when it orders a lesser or greater sentence than that which the statute mandates [citation]. [Citation.] In such a case, the defendant's sentence is illegal and void." *People v. White*, 2011 IL 109616, ¶ 20.

¶ 65　　　　If a circuit clerk, rather than the trial court, imposes a fine, the fine is void from its inception (*People v. Larue*, 2014 IL App (4th) 120595, ¶ 56; *People v. Alghadi*, 2011 IL App (4th) 100012, ¶ 20), meaning the fine is a nullity, without legal effect (Black's Law Dictionary 1568 (7th ed. 1999) (definition of "void")). It follows that a sentence lacks any fine imposed solely by a circuit clerk (since such a fine is void). It further follows that if statutory law requires the imposition of the fine in question, the sentence itself is void, being a more lenient sentence than statutory law allows (*White*, 2011 IL 109616, ¶ 20; *Montiel*, 365 Ill. App. 3d at 605-06). A sentence lacking a fine that statutory law requires is a sentence that "does not conform to a statutory requirement," and such a sentence is void. *Arna*, 168 Ill. 2d at 113.

¶ 66　　　　Not only *can* the appellate court, *sua sponte*, correct sentences that fail to conform to statutory law (*id.*), but the appellate court has a *duty* to do so, *sua sponte*. The supreme court said in *People v. Thompson*, 209 Ill. 2d 19, 27 (2004), and reiterated in *Delgado v. Board of Election Commissioners*, 224 Ill. 2d 481, 486 (2007): "[C]ourts have an independent duty to vacate void orders ***." "Even if the parties themselves do not raise the question, courts have an independent duty to vacate and expunge void orders and thus may *sua sponte* declare an order void." *Daniels v. Industrial Comm'n*, 201 Ill. 2d 160, 166 (2002). See also *People v. Childs*, 278 Ill. App. 3d 65, 78 (1996) ("[I]f the sentence *** [were] void, this court would have had a duty to *sua sponte* raise the issue."); *People v. Magnus*, 262 Ill. App. 3d 362, 365 (1994) ("Defendant's [invocation of Illinois Supreme Court Rule 604 (eff. Aug. 1, 1992)] is without merit since this issue was raised *sua sponte* by the court in fulfillment of our duty to vacate void judgments.").


¶ 67　　　　　　　　B. The Difference Between a Fine and a Fee (or Cost)

¶ 68　　　　The question of whether an assessment is a fine or a fee and the question of how many assessments may be imposed in the case are both questions of law, which we should resolve *de novo*. *People v. Gutman*, 2011 IL 110338, ¶ 12. I will begin with some general observations about fines and fees.

¶ 69　　　　Case law sets up a dichotomy between a fee or cost on the one hand and a fine on the other hand. *People v. Jones*, 223 Ill. 2d 569, 582 (2006). A fine is a pecuniary punishment for a conviction, whereas a fee or cost "compensat[es] the state for some expenditure [it] incurred in prosecuting the defendant." (Internal quotation marks omitted.) *Id.*

¶ 70　　　　In *Jones*, the supreme court saw no need to make a rigorous distinction between a fee and a cost. *Id.* at 582 n.1. For purposes of that case, it was enough to observe that both a fee and a cost sought to "recoup expenses" the State had "incurred in prosecuting the defendant." *Id.* at

582. Statutory law does not appear to make a rigorous distinction between a fee and a cost, either. See 705 ILCS 105/16 (West 2012) (the circuit clerk shall keep a "fee book," and "whenever an action is determined and final judgment entered, the *costs* of each party litigant shall be made up and entered in such *fee* book" (emphases added)).

¶ 71    So, it appears that both the supreme court and statutory law treat a fee and a cost as roughly synonymous. According to the supreme court, a fee recoups a cost. "This is the *central* characteristic which separates a fee from a fine. A charge is a fee if and only if it is intended to reimburse the state for some cost incurred in [the] defendant's prosecution." (Emphasis in original.) *Jones*, 223 Ill. 2d at 600. In this context, the supreme court quoted section 124A-5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/124A-5 (West 2012)), which provides: "When a person is convicted of an offense ***, the court shall enter judgment that the offender pay *the costs of the prosecution*." (Emphasis added.)

¶ 72    In *Jones*, the supreme court listed some examples of costs: " 'A "cost" is a charge or fee taxed by a court such as a filing fee, jury fee, courthouse fee, or reporter fee.' " *Jones*, 223 Ill. 2d at 581 (quoting *People v. White*, 333 Ill. App. 3d 777, 781 (2002)). Ultimately, those examples came from Black's Law Dictionary. *White*, 333 Ill. App. 3d at 781 (citing *People v. Despenza*, 318 Ill. App. 3d 1155, 1157 (2001), citing Black's Law Dictionary 350 (7th ed. 1999)); but see *Kemner v. Monsanto Co.*, 217 Ill. App. 3d 188, 215 (1991) (jurors' fees not taxable as costs); *People v. Kluck*, 70 Ill. App. 3d 582, 584 (1979) (same).

¶ 73    In a *civil* case, a filing fee, courthouse fee, or reporter's fee is a cost only because the prevailing party had to pay that item in order to participate in the litigation, not because the county incurred an expense in maintaining the court system. The county charges all civil litigants a courthouse fee and a filing fee to help finance the circuit court, and the losing party must reimburse not the circuit clerk but the prevailing party, who had to pay the courthouse fee and the filing fee to prosecute the case. The prevailing party may file a bill of costs, an itemized statement of that party's litigation expenses, which, in a hearing on the bill of costs, the trial court will allow or disallow (or allow in part and disallow in part). *Pokora v. Warehouse Direct, Inc.*, 322 Ill. App. 3d 870, 874 (2001); *Gruidl v. Schell*, 166 Ill. App. 3d 276, 283 (1988); *Bergman v. Schlundt*, 163 Ill. App. 3d 1070, 1071-72 (1987). A "cost" is an "allowance[ ] in the nature of incidental damages awarded by law to reimburse the prevailing party, to some extent at least, for the expenses necessarily incurred in the assertion of his rights in court." *Galowich v. Beech Aircraft Corp.*, 92 Ill. 2d 157, 165-66 (1982).

¶ 74    A cost incurred in the assertion of one's rights in court is different from a cost incurred in the operation of the court system. Undeniably, without a court system and a courthouse, which cost money to maintain, there would have been no civil case in the first place, but that fact is not enough to make a courthouse fee and a filing fee a cost: those items are costs only because the prevailing party had to pay them as expenses of litigation. See *id.*; 55 ILCS 40/3 (West 2012) ("It shall be the duty of all clerks of court upon application, to give to any person a certificate, showing the amount of costs and fees *due such person*, and the names of the parties to any suit or proceeding in which the same are taxed." (Emphasis added.)).

¶ 75    In a *criminal* case, the State's Attorney does not have to pay a courthouse fee or a filing fee to prosecute the defendant. Therefore, those items and similar items are not "costs," properly speaking, in a criminal case–even if the legislature called them "costs." Just as the statutory label of a "fee" is "not necessarily definitive" (*Jones*, 223 Ill. 2d at 583), the statutory label of a "cost" is not necessarily definitive. The legislature cannot transform what is essentially a fine

- 12 -

into a cost merely by calling it such, any more than the legislature can transform a fine into a fee by calling it such. See *id.*

¶ 76 In other words, "cost" is a term of art, which might be inapt in a statute aimed at financing the court system. An assessment can finance the court system without being a cost of the prosecution itself–even though, obviously, the existence of a court system was essential to the prosecution. A fee to repair the courthouse roof, for example, or to pay security guards is not a cost of the prosecution, even though there could have been no prosecution with rainwater soaking the courtroom or with troublemakers disrupting the proceedings.

¶ 77 A witness fee, by contrast, would be a true cost of the prosecution. *People v. Shackelford*, 225 Ill. App. 3d 676, 677 (1992). Specifically to prosecute the defendant, the State subpoenaed witnesses, and as a result, the county, a political subdivision of the state (*Proffitt v. County of Christian*, 370 Ill. 530, 535 (1939)), became liable to those witnesses for statutory fees (see 705 ILCS 35/4.3 (West 2012)). Also, specifically to prosecute the defendant, the State had to procure his or her attendance. Serving an arrest warrant or, say, transporting the defendant from a different county or state costs money, and the county is entitled to reimbursement for this cost of the prosecution (725 ILCS 5/124A-5 (West 2012)). In short, a distinction has to be made between "the costs of *the* prosecution" (emphasis added) (*id.*) and "expenditures which must be made in order to maintain and operate the judicial system irrespective of specific violations of the law" (*Gooch v. State*, 685 N.E.2d 152, 155 (Ind. Ct. App. 1997)).

¶ 78 The supreme court made this distinction in *People v. Graves*, 235 Ill. 2d 244 (2009), a case in which the defendant incurred fines for possessing a stolen motor vehicle (*id.* at 246). The trial court sentenced him to imprisonment and imposed upon him various monetary assessments, including $10 for the mental health court and $5 for the youth diversion/peer court. *Id.* Subsections (d-5) and (e) of section 5-1101 of the Counties Code (55 ILCS 5/5-1101(d-5), (e) (West 2006)) authorized those assessments. *Graves*, 235 Ill. 2d at 246.

¶ 79 The defendant in *Graves* argued that the assessments for the mental health court and youth diversion/peer court should be "vacated as unconstitutional where there was no rational relationship between the legislative purpose underlying the fees and his offense of possession of a stolen motor vehicle." *Id.* The appellate court concluded, however, that the two assessments actually were fines rather than fees. *Id.* at 246-47. On the basis of that distinction, the appellate court upheld the two assessments against the defendant's constitutional challenge. *Id.*

¶ 80 The only issue before the supreme court was "whether the appellate court correctly found that the monetary charges imposed by the circuit court [t]herein [were] fines and not fees." *Id.* at 247. Whenever the constitutionality of a statutory assessment was challenged, the initial question was whether the assessment was a fine or a fee. *Id.* at 250. If the assessment were a fine as opposed to a fee, the purposes to which the proceeds were applied had no bearing on the constitutionality of the assessment. *Id.* at 252. To be constitutional, a fine (as distinct from a fee) did not have to be spent on any purpose relevant to the conviction. So, in the case of a fine, one did not even reach the question of a rational relationship.

¶ 81 The assessments for the mental health court and youth diversion/peer court were fines disguised as fees. The supreme court noted that, despite the heading of section 5-1101 (55 ILCS 5/5-1101 (West 2006)), which read, " 'Additional *fees* to finance [the] court system,' " the assessments for the mental health court and youth diversion/peer review court had the central characteristic of a fine: they "[did] not seek to compensate the state for any costs

incurred as the result of prosecuting the defendant." (Emphasis added.) *Graves*, 235 Ill. 2d at 251 (quoting 55 ILCS 5/5-1101 (West 2006)). In addition, the supreme court noted, these assessments had two other attributes of a fine: "they were exacted only after [a] conviction for a criminal offense[,] and, while payable to a county fund rather than the state treasury, it [was] undisputed that they further[ed] the state's interest in financing the court system" (*id.* at 252)–thus the title of the section: "Additional fees to finance [the] court system" (55 ILCS 5/5-1101 (West 2006)). (I would suggest it makes little sense to view the *postconviction imposition* of an assessment as a factor indicating a fine, considering that costs likewise are imposed on the defendant only after conviction. See 725 ILCS 5/124A-5 (West 2012).)

¶ 82    Even so, the defendant insisted that the assessments for the mental health court and youth diversion/peer review court could not possibly be fines, considering that the Counties Code gave the county board no authority to impose punishments. *Graves*, 235 Ill. 2d at 252. The supreme court disagreed. For one thing, section 5-1113 of the Counties Code, a section entitled " 'Ordinance and rules to execute powers; limitations on punishments,' " gave county boards "the limited authority to set fines as punishments for various violations." *Id.* at 253 (quoting 55 ILCS 5/5-1113 (West 2006)). For another thing, section 5-1101 of the Counties Code, even though it was labeled as " '*fees* to finance [the] court system,' " really authorized fines. (Emphasis added.) *Graves*, 235 Ill. 2d at 253 (quoting 55 ILCS 5/5-1101 (West 2006)). The supreme court said:

> "In addition to the two subsections under which fines were imposed in this case, section 5-1101 also authorizes *monetary penalties* to be paid by a defendant on a judgment of guilty or a grant of supervision for violation of certain sections of the Illinois Vehicle Code or of the Unified Code of Corrections. See 55 ILCS 5/5-1101(a), (c), (d) (West 2006)." (Emphasis added.) *Id.*

Note that, in the passage quoted above, two of the subsections the supreme court cited were subsections (a) and (c) of section 5-1101 of the Counties Code (55 ILCS 5/5-1101(a), (c) (West 2006)). Further note that, under subsection (g) (55 ILCS 5/5-1101(g) (West 2006)), the proceeds of all assessments collected under subsections (a) and (c) were to "be placed in the county general fund and used to finance the court system in the county." Thus, even though the assessments were put in a county fund and were used to finance the court system, the supreme court called them "monetary penalties," *i.e.*, fines. *Graves*, 235 Ill. 2d at 253. Indeed, we can go further: precisely *because* such assessments were intended to "financ[e] the court system," the supreme court called them fines. *Id.* at 252.

¶ 83    In sum, when deciding in which category an assessment belongs–the category of fees and costs on the one hand or the category of fines on the other hand–we must be careful to differentiate between *financing the court system* and *reimbursing the state for an expense of the prosecution*. The former intent makes a fine (*id.*); the latter intent makes a fee or cost (*id.* at 250).

¶ 84                            C. The Inability of the Circuit Clerk To Impose a Fine

¶ 85    It is important to differentiate between fees and fines because, although circuit clerks may (in the first instance at least) decide the amounts of costs, they may not decide the amounts of fines.

¶ 86    Section 16(5) of the Clerks of Courts Act (Clerks Act) (705 ILCS 105/16(5) (West 2012)) provides: "It shall not be necessary to insert the cost in the judgment; but whenever an action is determined and final judgment entered, the costs of each party litigant shall be made up and entered in such fee book, which shall be considered a part of the record and judgment, subject, however, at all times to be corrected by the court ***." *Cf.* 735 ILCS 5/5-121 (West 2012) ("The clerk of any court in this state is hereby authorized and required to tax and subscribe all bills of costs arising in any action or proceeding instituted in which such person is clerk, agreeably to the rates which shall, at that time, be allowed or specified by law and shall in no case allow any item or charge unless the clerk shall be satisfied that the service for which it was made was actually performed in the action or proceeding."). Traditionally, the trial court awarded costs to the prevailing party without any itemization or amount, and the assessment or taxation of costs was thereafter a ministerial duty of the clerk of the court. *Bryan v. Smith*, 3 Ill. 47, 49 (1839); *Miller v. Adams*, 5 Ill. 195, 196 (1843); *People v. Nicholls*, 45 Ill. App. 3d 312, 314 (1977), *aff'd in part and rev'd in part on other grounds*, 71 Ill. 2d 166 (1978). A party dissatisfied with the clerk's assessment of costs could file a motion to retax costs. 735 ILCS 5/5-123 (West 2012); *Parisher v. Waldo*, 72 Ill. 71, 72 (1874). (As we have noted, in civil litigation, an alternative procedure has developed whereby, in the first instance, the prevailing party files a bill of costs and schedules a hearing on it.)

¶ 87    A circuit clerk has the authority to assess costs but lacks the authority to impose fines. The imposition of a fine is exclusively a judicial act. *Larue*, 2014 IL App (4th) 120595, ¶ 56. Circuit clerks may *collect* judicially imposed fines, but they themselves may not *impose* them. Only a judge may do that, in a sentencing hearing. *People v. Swank*, 344 Ill. App. 3d 738, 747-48 (2003). When a circuit clerk purports to impose " 'pecuniary punishment' " (*Jones*, 223 Ill. 2d at 581), *i.e.*, a fine, and the case comes before us on appeal, we have an independent duty to take corrective action (*Thompson*, 209 Ill. 2d at 27), although we expect appellate counsel to diligently assist us in identifying problematic assessments (*Chester*, 2014 IL App (4th) 120564, ¶ 35).

¶ 88    Because any fines imposed by the circuit clerk are void from their inception (*Larue*, 2014 IL App (4th) 120595, ¶ 56), the sentence itself could be void in that it lacks the fines that statutory law requires. An unauthorized demand by the circuit clerk is not a *bona fide* fine, and statutory law requires certain fines. Just as we have an independent duty to "act on void orders of the circuit clerk" (*People v. Gutierrez*, 2012 IL 111590, ¶ 14; see *Thompson*, 209 Ill. 2d at 27), so do we have an independent duty to take action when, because of the lack of effective fines, the sentence is more lenient than statutory law allows (*id.*; *White*, 2011 IL 109616, ¶ 20; *Arna*, 168 Ill. 2d at 113; *Montiel*, 365 Ill. App. 3d at 605-06).

¶ 89    Pursuant to that duty, I will begin by considering if there are any *bona fide* fines, fines the trial court imposed in its sentencing or resentencing of defendant (as distinct from fines the circuit clerk purported to impose). "In ascertaining the terms of the sentence, a reviewing court may examine the record as a whole [citation], since the oral pronouncement of sentence and the written sentencing order entered on the same date can be viewed as one transaction." *People v. Thurston*, 255 Ill. App. 3d 512, 514-15 (1994); see also *People v. Moore*, 301 Ill. App. 3d 728, 735 (1998) (in the case of a conflict between the oral pronouncement of the sentence and the written sentencing order, the oral pronouncement controls).

¶ 90     The trial court imposed its original sentence in the negotiated guilty-plea hearing, on April 27, 2010. In its oral pronouncement of the sentence, the court imposed no fine. Instead, the court referred vaguely to "monetary obligations due and owing."

¶ 91     The sentencing order of April 27, 2010, stated that defendant was to "pay all fines, fees and costs authorized by statute," but the only fines for which the sentencing order gave dollar amounts were "a fine in the amount of $300" and "a local anti-crime (Crime Stoppers) assessment fee of $10."

¶ 92     Although the sentencing order imposed a "Violent Crime Victims Assistance Act fee" in an unspecified amount, this was not definite and certain enough to qualify as part of the sentence. Research and application of statutory law (725 ILCS 240/10(c)(2) (West 2008)) and case law (*Williams*, 2013 IL App (4th) 120313, ¶ 21) would have been necessary to determine the amount of the fine. See *People v. Dennison*, 399 Ill. 484, 485-86 (1948) ("It is also a well-established rule that a judgment in a criminal case should be so clear and definite that the meaning may be found from the language used without the necessity of judicial construction to ascertain its import."); *People v. Willis*, 235 Ill. App. 3d 1060, 1075 (1992) ("A sentence must be specific so it does not require additional construction.").

¶ 93     The docket entry for April 27, 2010, says "Fine + Cost Fee $1604.55," and then it breaks down that amount into "Fine + Cost 519.55," $10 for "CRIME STOPPERS," $360 for "PROBATION MONITORIN[G]," $0 FOR "STATE OFFENDER DNA," $450 for "PUBLIC DEFENDER," $255 for "SEXUAL OFFENDER REG," and $10 for "ST POLICE SERVICES." Apparently, the $0 acknowledges that defendant's DNA already was on file. It is unclear how much of $519.55 is for fines and how much is for costs.

¶ 94     Thus, the only fines the trial court imposed in the original sentence were an unnamed fine in the amount of $300, $10 for "ST POLICE SERVICES" (730 ILCS 5/5-9-1.17 (West 2010)) (*People v. Wynn*, 2013 IL App (2d) 120575, ¶ 13 (classifying this assessment as a fine)); $10 for "CRIME STOPPERS" (730 ILCS 5/5-6-3(b)(13) (West 2008)) (*People v. Littlejohn*, 338 Ill. App. 3d 281, 284 (2003) (classifying this assessment as a fine)); and $255 for "SEXUAL OFFENDER REG" (730 ILCS 150/10 (West 2008) (classifying this assessment as a fine)).

¶ 95     The remaining assessments the trial court imposed were fees. The appellate court has held that a probation fee (730 ILCS 5/5-6-3(i) (West 2008)) is a true fee. *White*, 333 Ill. App. 3d at 782; see *Jones*, 223 Ill. 2d at 585 (citing *White* with apparent approval on this point). And obviously the public defender's fee compensates the government for an expense it incurred in prosecuting defendant in that the representation of defendant by counsel was a condition of his prosecution. See *id.* at 600.

¶ 96     Such was the original sentence. Thereafter, defendant violated probation, and the trial court resentenced him on September 24, 2012. The court orally pronounced a sentence of 58 months' imprisonment, without mentioning any new fines.

¶ 97     Likewise, the written resentencing order said nothing about fines or any monetary obligation other than that "the Defendant [was] ordered to pay costs of prosecution herein."

¶ 98     The docket entry of September 24, 2012, corresponding to the resentencing, states: "Cost Only Fee $382" in addition to the sentence the court orally pronounced.

¶ 99     In sum, then, the trial court imposed only four fines in this case: the fine of $300, $10 for "ST POLICE SERVICES," $10 for "CRIME STOPPERS," and $255 for "SEXUAL OFFENDER REG." (I realize the court did not include these fines in its *pronouncement* of the

sentence. A defendant has a constitutional right to be present during the imposition of the sentence (*People v. Phillips*, 242 Ill. 2d 189, 194 (2011)), and an argument could be made that if, after pronouncing the sentence in the sentencing hearing, the court silently inserts an additional punishment into the written sentencing order or into a docket entry, the court violates that constitutional right, because the defendant was not present, in any meaningful way, for the imposition of that additional punishment. Defendant does not make that argument, and therefore the argument is forfeited (see Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) ("Points not argued are waived ***.")); nevertheless, I did not want to appear to be oblivious of the potential problem.)

¶ 100　　When I look, however, at the circuit clerk's printout of assessments in the record, I find many additional assessments which are essentially fines.

¶ 101　　　　　　　　　　　1. *"TRAFFIC/CRIMINAL SU"*

¶ 102　　The circuit clerk imposed on defendant an assessment in the amount of $80, which she labeled "TRAFFIC/CRIMINAL SU." The letters "SU" apparently are an abbreviation for "surcharge."

¶ 103　　Case law identifies section 5-9-1(c) of the Unified Code of Corrections (730 ILCS 5/5-9-1(c) (West 2008)) as the statute creating the criminal surcharge. *Larue*, 2014 IL App (4th) 120595, ¶ 19. The statute provides as follows:

> "(c) There shall be added to every fine imposed in sentencing for a criminal or traffic offense, except an offense relating to parking or registration, or offense by a pedestrian, an additional penalty of $10 for each $40, or fraction thereof, of fine imposed. The additional penalty of $10 for each $40, or fraction thereof, of fine imposed, if not otherwise assessed, shall also be added to every fine imposed upon a plea of guilty, stipulation of facts or findings of guilty, resulting in a judgment of conviction, or order of supervision in criminal, traffic, local ordinance, county ordinance, and conservation cases (except parking, registration, or pedestrian violations), or upon a sentence of probation without entry of judgment under Section 10 of the Cannabis Control Act [(720 ILCS 550/10 (West 2008))], Section 410 of the Illinois Controlled Substances Act [(720 ILCS 570/410 (West 2008))], or Section 70 of the Methamphetamine Control and Community Protection Act [(720 ILCS 646/70 (West 2008))]." 730 ILCS 5/5-9-1(c) (West 2008).

¶ 104　　As the statute plainly indicates, the criminal surcharge is a fine, "an additional penalty." *Id.* A circuit clerk has no authority to impose fines. *Swank*, 344 Ill. App. 3d at 747-48. Therefore, we should vacate the criminal surcharge that the circuit clerk imposed, and we should direct the trial court, on remand, to impose a criminal surcharge in the amount of $10 for each $40, or fraction thereof, of other fines imposed. See 730 ILCS 5/5-9-1(c) (West 2008).

¶ 105　　　　　　　　　　　2. *"VICTIMS FUND–FINE"*

¶ 106　　The circuit clerk imposed an assessment in the amount of $32, which she labeled as "VICTIMS FUND–FINE." We should vacate it because a circuit clerk may impose no fine. See *People v. Higgins*, 2014 IL App (2d) 120888, ¶ 28.

¶ 107　　Case law identifies section 10(b) of the Violent Crime Victims Assistance Act (725 ILCS 240/10(b) (West 2008)) as the source of this type of fine. *Rexroad*, 2013 IL App (4th) 110981,

¶ 55; *People v. Fales*, 247 Ill. App. 3d 681, 682 (1993). Section 10(b) provides: "On and after September 18, 1986, there shall be an additional penalty collected from each defendant upon conviction of any felony *** of $4 for each $40, or fraction thereof, of fine imposed." 725 ILCS 240/10(b) (West 2008).

¶ 108    Thus, there are two mandatory fines, the "TRAFFIC/CRIMINAL SURCHARGE" (730 ILCS 5/5-9-1(c) (West 2008)) and the "VICTIMS FUND–FINE" (the victims' assistance fine) (725 ILCS 240/10(b) (West 2008)), the amounts of which depend on $40 increments, or fractions thereof, of the other fines. We have held that the criminal surcharge is to be calculated before the victims' assistance fine. *Williams*, 2013 IL App (4th) 120313, ¶ 21. The criminal surcharge is added to the total fines, and then the victims' assistance fine is calculated on the basis of the new total. *Id.* We should direct the trial court, on remand, to calculate and impose a fine under section 10(b) of the Violent Crime Victims Assistance Act (725 ILCS 240/10(b) (West 2008)).

¶ 109    3. *A Fine To Fund the Expungement of Juvenile Records,*
*Divided Between "ST POLICE SERVICES,"*
*"CLERK OP & ADMIN FU," and "STATES ATTORNEY"*

¶ 110    Section 5-9-1.17 of the Unified Code of Corrections (730 ILCS 5/5-9-1.17 (West 2010)) provides as follows:

"§ 5-9-1.17. Additional fine to fund expungement of juvenile records.

(a) There shall be added to every penalty imposed in sentencing for a criminal offense an additional fine of $30 to be imposed upon a plea of guilty or finding of guilty resulting in a judgment of conviction.

(b) Ten dollars of each such additional fine shall be remitted to the State Treasurer for deposit into the State Police Services Fund to be used to implement the expungement of juvenile records as provided in Section 5-622 of the Juvenile Court Act of 1987 [(705 ILCS 405/5-622 (West 2010))], $10 shall be paid to the State's Attorney's Office that prosecuted the criminal offense, and $10 shall be retained by the Circuit Clerk for administrative costs associated with the expungement of juvenile records and shall be deposited into the Circuit Court Clerk Operation and Administrative Fund."

¶ 111    Apparently under section 5-9-1.17(b) (730 ILCS 5/5-9-1.17(b) (West 2010)), the circuit clerk imposed a fine of $10, which it designated for "ST POLICE SERVICES," and the circuit clerk included that fine in her printout. Additionally, the circuit clerk imposed an assessment of $10 labeled "CLERK OP & ADMIN FU" and two assessments of $40 labeled "STATES ATTORNEY." The $10 for the circuit clerk operation and administrative fund is one of the fines referenced in section 5-9-1.17(b) (730 ILCS 5/5-9-1.17(b) (West 2010)). Each of the assessments of $40, labeled "STATES ATTORNEY," apparently consists of a fee of $30 under section 4-2002(a) of the Counties Code (55 ILCS 5/4-2002(a) (West 2008)) plus a fine of $10 under section 5-9-1.17(b) of the Unified Code of Corrections (730 ILCS 5/5-9-1.17(b) (West 2010)) for "the State's Attorney's Office that prosecuted the offense."

¶ 112    The problem is that not only did the circuit clerk, instead of a judge, impose all but $10 of these fines (see *Larue*, 2014 IL App (4th) 120595, ¶ 56), but section 5-9-1.17 did not go into effect until January 1, 2010 (Pub. Act 96-707, § 15 (eff. Jan. 1, 2010)). Defendant committed

his offense on October 5, 2009. Imposing upon him a fine that did not go into effect until after his commission of the offense violates *ex post facto* principles. See *People v. Dalton*, 406 Ill. App. 3d 158, 164 (2010).

¶ 113    Therefore, we should vacate the fine of $10 that the trial court imposed for "ST POLICE SERVICES." Also, referring to the circuit clerk's printout, we should vacate the fine of $10 for "ST POLICE SERVICES" and the fine of $10 for "CLERK OP & ADMIN FU," and we should reduce the assessments of $40, labeled "STATES ATTORNEY," to assessments of $30.

¶ 114                           4. *"VICTIMS FUND–NO FINE"*

¶ 115    The circuit clerk imposed an assessment of $20 labeled "VICTIMS FUND–NO FINE." Apparently, the circuit clerk intended this to be a fine pursuant to section 10(c)(2) of the Violent Crime Victims Assistance Act (725 ILCS 240/10(c)(2) (West 2008)), which provides:

> "(c) When any person is convicted in Illinois on or after August 28, 1986, of an offense listed below, or placed on supervision for such an offense on or after September 18, 1986, *and no other fine is imposed*, the following penalty shall be collected by the Circuit Court Clerk:
>
> > ***
>
> (2) $20, for any other felony or misdemeanor ***." (Emphasis added.)

There are two problems with this fine: (1) the circuit clerk imposed it (see *Larue*, 2014 IL App (4th) 120595, ¶ 56), and (2) this fine should be imposed only when no other fine is imposed (725 ILCS 240/10(c)(2) (West 2008)). Other fines have to be imposed in this case. Therefore, we should vacate the fine of $20 labeled "VICTIMS FUND–NO FINE."

¶ 116                           5. *"ST POLICE OPERATION"*

¶ 117    The circuit clerk imposed an assessment of $10 labeled "ST POLICE OPERATION" (not to be confused with "ST POLICE SERVICES"). Case law identifies this assessment as a fine pursuant to section 27.3a(1.5) of the Clerks Act (705 ILCS 105/27.3a(1.5) (West 2010) (as amended by Pub. Act 96-1029, § 6 (eff. July 13, 2010))). *People v. Millsap*, 2012 IL App (4th) 110668, ¶ 31. That section provides as follows:

> "1.5. Starting on the effective date of this amendatory Act of the 96th General Assembly, a clerk of the circuit court in any county that imposes a fee pursuant to subsection 1 of this Section [(the automation fee)], shall charge and collect an additional fee in an amount equal to the amount of the fee imposed pursuant to subsection 1 of this Section. This additional fee shall be paid by the defendant in any felony, traffic, misdemeanor, local ordinance, or conservation case upon a judgment of guilty or grant of supervision." 705 ILCS 105/27.3a(1.5) (West 2010).

Subsection (5) of section 27.3a of the Clerks Act (705 ILCS 105/27.3a(5) (West 2010)) in turn requires the clerk to remit this additional assessment to the State Treasurer for deposit into the State Police Operations Assistance Fund.

¶ 118    There are two problems with this fine: (1) circuit clerks cannot impose fines (see *Larue*, 2014 IL App (4th) 120595, ¶ 56), and (2) the statute creating this fine did not exist on October 5, 2009, when defendant committed the offense of unlawful failure to register as a sex offender (see Pub. Act 96-1029, § 6 (eff. July 13, 2010) (adding subsections 1.5 and 5 to section 27.3a

(705 ILCS 105/27.3a (West 2010))) (see *Dalton*, 406 Ill. App. 3d at 164)). Therefore, we should vacate the fine of $10 labeled "ST POLICE OPERATION."

¶ 119                          6. *The Unnamed Fine of $300*

¶ 120    Apparently, if the trial court had its preference, it would not pile on defendant as many fines as the legislature requires, but, rather, the court would fine defendant in a lesser amount–as in fact it did. In an effort to be consistent with that apparent preference (to the extent the law allows), we should vacate the unnamed fine of $300 while remanding the case with directions to impose the statutorily mandated fines. If the court saw fit to do so, it could reimpose the fine of $300 on remand.

¶ 121                          7. *"DOCUMENT STORAGE"*

¶ 122    The circuit clerk imposed two assessments in the amount of $5 labeled "DOCUMENT STORAGE." The statutory authority for such an assessment is section 27.3c of the Clerks Act (705 ILCS 105/27.3c(a) (West 2008)), a section with the heading "Document storage system." The relevant subsections provide as follows:

> "(a) The expense of establishing and maintaining a document storage system in the offices of the circuit court clerks in the several counties of this State shall be borne by the county. To defray the expense in any county that elects to establish a document storage system and convert the records of the circuit court clerk to electronic or micrographic storage, the county board may require the clerk of the circuit court in its county to collect a court document fee of not less than $1 nor more than $15, to be charged and collected by the clerk of the court. The fee shall be paid at the time of filing the first pleading, paper, or other appearance filed by each party in all civil cases or by the defendant in any felony, misdemeanor, traffic, ordinance, or conservation matter on a judgment of guilty or grant of supervision, provided that the document storage system is in place or has been authorized by the county board and further that no additional fee shall be required if more than one party is presented in a single pleading, paper, or other appearance. The fee shall be collected in the manner in which all other fees or costs are collected.

> (b) Each clerk shall commence charges and collections of a court document fee upon receipt of written notice from the chairman of the county board together with a certified copy of the board's resolution, which the clerk shall file of record in his or her office.

> (c) Court document fees shall be in addition to other fees and charges of the clerk, shall be assessable as costs, and may be waived only if the judge specifically provides for the waiver of the court document storage fee. The fees shall be remitted monthly by the clerk to the county treasurer, to be retained by the treasurer in a special fund designated as the Court Document Storage Fund. The fund shall be audited by the county auditor, and the board shall make expenditures from the fund in payment of any costs relative to the storage of court records, including hardware, software, research and development costs, and related personnel, provided that the expenditure is approved by the clerk of the circuit court." 705 ILCS 105/27.3c(a) to (c) (West 2008).

¶ 123    The Champaign County board has passed a resolution directing the circuit clerk to collect a document fee in the amount of $5 "to defray the expense of the document storage system and to convert the records of the Circuit Clerk to electronic storage." Champaign County Board Resolution No. 3477, Resolution Authorizing the Circuit Clerk's Document Storage Fee (adopted Aug. 16, 1994), *available at* http://champaigncountyclerk.com/county_board/resolutions/r03001_04000/r03477.pdf.

¶ 124    In previous decisions, the appellate court has regarded the document storage assessment as a true fee. *People v. Martino*, 2012 IL App (2d) 101244, ¶ 30; *People v. Tolliver*, 363 Ill. App. 3d 94, 97 (2006). In light of the supreme court's decision in *Graves*, however, we should rethink how best to describe the function of the document storage assessment. Does this assessment really "seek[ ] to compensate the state for [a cost] incurred as the result of prosecuting the defendant"? *Graves*, 235 Ill. 2d at 250. Or would it be more accurate to say this assessment "further[s] the state's interest in financing the court system"? *Id.* at 252.

¶ 125    The court system has several components, *e.g.*, record-keeping, security, adjudication, physical maintenance of the courthouse. No significant distinction can be made between financing the court system and financing a component of the court system. The document storage assessment is intended to finance the record-keeping component of the court system. Therefore, despite the statutory designation of the document storage assessment as a "cost" (705 ILCS 105/27.3c(c) (West 2008))–a designation that is relevant, though not definitive (see *Graves*, 235 Ill. 2d at 251; *Jones*, 223 Ill. 2d at 583)–this assessment is essentially a fine. See *id.*

¶ 126    Granted, a counterargument could be made that maintaining the judicial records in this particular case was not free; doing so increased the county's financial burden to some extent. Feeding the pages through the scanner put wear and tear on the scanner, hastening the day when it eventually must be replaced. Defendant's file took up memory space in the computer, hastening the day when the county must buy additional hardware. The more criminal cases the county has, the more record-keeping personnel it must hire.

¶ 127    All this might be true. Nevertheless, we must not be distracted from the germane question: Does this assessment defray a cost of the prosecution, or does it more generally defray a cost of the court system? Document storage is a neutral, ministerial activity. There is nothing distinctively prosecutorial about it.

¶ 128    Instead of reimbursing a cost of the prosecution, the document storage assessment finances the document storage system as a whole and finances the conversion of all records to electronic storage, not just the records in defendant's case. See also 705 ILCS 105/27.3c(a) (West 2008). The assessment is to be deposited into a special fund, and "the board shall make expenditures from the fund in payment of *any* costs relative to the storage of *court records*, including hardware, software, research and development costs, and related personnel, provided that the expenditure is approved by the clerk of the circuit court." (Emphases added.) 705 ILCS 105/27.3c(c) (West 2008). In short, the costs to which the assessment will be applied are not limited to those the state "incurred as the result of prosecuting the defendant." *Graves*, 235 Ill. 2d at 250.

¶ 129    Thus, the document storage assessment is a fine. Accordingly, we should vacate the two document storage fines of $5 imposed by the circuit clerk, and we should direct the trial court, on remand, to impose only one document storage fine in the amount of $5. See *Larue*, 2014 IL App (4th) 120595, ¶ 62.

### 8. *"AUTOMATION"*

¶ 131    The circuit clerk imposed two assessments in the amount of $10 labeled "AUTOMATION." The statutory authority for the automation assessment is section 27.3a(1) of the Clerks Act (705 ILCS 105/27.3a(1) (West 2008)), which provides as follows:

> "1. The expense of establishing and maintaining automated record keeping systems in the offices of the clerks of the circuit court shall be borne by the county. To defray such expense in any county having established such an automated system or which elects to establish such a system, the county board may require the clerk of the circuit court in their county to charge and collect a court automation fee of not less than $1 nor more than $15 to be charged and collected by the clerk of the court. Such fee shall be paid at the time of filing the first pleading, paper or other appearance filed by each party in all civil cases or by the defendant in any felony, traffic, misdemeanor, municipal ordinance, or conservation case upon a judgment of guilty or grant of supervision, provided that the record keeping system which processes the case category for which the fee is charged is automated or has been approved for automation by the county board, and provided further that no additional fee shall be required if more than one party is presented in a single pleading, paper or other appearance. Such fee shall be collected in the manner in which all other fees or costs are collected."

¶ 132    The automation assessment does not "seek[ ] to compensate the state for any costs incurred as the result of prosecuting the defendant." *Graves*, 235 Ill. 2d at 250. More accurately, it "financ[es]" a component of "the court system" (*id.* at 252), namely, the "automated record[-]keeping system[ ]" (705 ILCS 105/27.3a(1) (West 2008)). The automated record-keeping system in Champaign County did not "result" from the prosecution of defendant, the way a witness fee, for example, might have resulted from his prosecution. *Graves*, 235 Ill. 2d at 250. The automation assessment does not "defray" an expense specifically resulting from his prosecution; rather, it "defray[s]" "[t]he expense of establishing and maintaining [the] automated record[-]keeping system[ ]" as a whole. 705 ILCS 105/27.3a(1) (West 2008). Therefore, even though section 27.3a(1) calls the automation assessment a "fee," it essentially is a fine (see *Graves*, 235 Ill. 2d at 251; *Jones*, 223 Ill. 2d at 583), which the circuit clerk lacked the power to impose (see *Larue*, 2014 IL App (4th) 120595, ¶ 56). But see *id.* ¶ 64 (characterizing this assessment as a fee).

¶ 133    Consequently, we should vacate the two assessments in the amount of $10 labeled "AUTOMATION," and we should direct the trial court, on remand, to impose only one automation fine. See *id.*

### 9. *"STATES ATTORNEY AUT"*

¶ 135    The circuit clerk imposed an assessment of $2 labeled "STATES ATTORNEY AUT." Evidently, "AUT" is an abbreviation for "automation." The relevant statutory authority is section 4-2002(a) of the Counties Code (55 ILCS 5/4-2002(a) (West 2012)), which provides as follows:

> "State's attorneys shall be entitled to a $2 fee to be paid by the defendant on a judgment of guilty or a grant of supervision for a violation of any provision of the Illinois Vehicle Code or any felony, misdemeanor, or petty offense to discharge the

expenses of the State's Attorney's office for establishing and maintaining automated record keeping systems. The fee shall be remitted monthly to the county treasurer, to be deposited by him or her into a special fund designated as the State's Attorney Records Automation Fund. Expenditures from this fund may be made by the State's Attorney for hardware, software, research, and development costs and personnel related thereto."

¶ 136    This assessment does not "seek[ ] to compensate the state for any costs incurred as the result of prosecuting the defendant." *Graves*, 235 Ill. 2d at 250. Instead, more generally, it helps the State's Attorney meet the expenses of "hardware, software, research, and development costs and personnel related thereto." 55 ILCS 5/4-2002(a) (West 2012). Even though the State's Attorney probably used "hardware," "software," and "personnel related thereto" in the prosecution of defendant, the State's Attorney did not incur the expense of those items specifically and exclusively as a result of prosecuting defendant. The computers were used, and will continue to be used, for additional purposes, not just prosecuting him. The record contains no evidence that prosecuting the defendant put $2 of wear and tear on the State's Attorney's computers. Nor does the record contain any evidence that the prosecution of defendant caused the State's Attorney to incur technology-related "research[ ] and development costs." *Id.*

¶ 137    Instead of saying the State's Attorney's automation assessment reimburses the state for an expense resulting from the prosecution of defendant, it would be more accurate to say this assessment helps to finance the technological component of the State's Attorney's office. To paraphrase *Graves*, it is *because* the State's Attorney's automation assessment in no way compensates the state for the cost of prosecuting defendant that it is a fine, and not a fee. *Graves*, 235 Ill. 2d at 252. Therefore, even though section 4-2002(a) calls the State's Attorney's automation assessment a "fee," it essentially is a fine (see *id.* at 251; *Jones*, 223 Ill. 2d at 583), which the circuit clerk lacked the power to impose (see *Larue*, 2014 IL App (4th) 120595, ¶ 56).

¶ 138    Not only should we vacate the fine of $2 labeled "STATES ATTORNEY AUT," but we should alert the trial court to the impermissibility of the fine in this case. The State's Attorney's automation fine did not exist on October 5, 2009, when defendant committed his offense of failure to register as a sex offender. The fine did not go into effect until June 1, 2012. Pub. Act 97-673, § 5 (eff. June 1, 2012). Imposing this fine upon him would subject him to an *ex post facto* punishment. See *Dalton*, 406 Ill. App. 3d at 164.

¶ 139                              10. *"CIRCUIT CLERK FEE"*

¶ 140    The circuit clerk imposed two assessments in the amount of $100 apiece labeled "CIRCUIT CLERK FEE." The statutory authority for such an assessment is section 27.1a(w)(1)(A) of the Clerks Act (705 ILCS 105/27.1a(w)(1)(A) (West 2008)). Sections 27.1(w)(1)(A) to (E) (705 ILCS 105/27.1a(w)(1)(A) to (E) (West 2008)) provide as follows:

"(w) Criminal and Quasi-Criminal Costs and Fees.

(1) The clerk shall be entitled to costs in all criminal and quasi-criminal cases from each person convicted or sentenced to supervision therein as follows:

(A) Felony complaints, a minimum of $40 and a maximum of $100.

(B) Misdemeanor complaints, a minimum of $25 and a maximum of $75.

- 23 -

(C) Business offense complaints, a minimum of $25 and a maximum of $75.

(D) Petty offense complaints, a minimum of $25 and a maximum of $75.

(E) Minor traffic or ordinance violations, $10."

¶ 141   An argument could be made that this ascending schedule of assessments intends to recoup clerical expenses. Obviously, compiling and maintaining the record in defendant's criminal case cost some amount of money. It was necessary to make docket entries and file papers; and labor and materials are not free.

¶ 142   Because the circuit clerk, however, prosecutes no one and has no prosecutorial function, it is unclear how the cost of those activities by the circuit clerk could be considered a cost "incurred in prosecuting the defendant." *Jones*, 223 Ill. 2d at 582. The circuit clerk is not a prevailing party. Rather, the circuit clerk is a neutral ministerial officer of the court (*People ex rel. Pardridge v. Windes*, 275 Ill. 108, 113 (1916)), aligned with neither the prosecution nor the defense. "[T]he writing of the record is a ministerial act," not a prosecutorial act. *Id.*

¶ 143   Even if it were possible for a circuit clerk, as a nonparty, to incur *expenses of prosecution*, the record appears to contain no evidence that any particular thing the circuit clerk did in defendant's case, or any combination of things she did in his case, cost precisely $100. In reality, $100 is a rather arbitrary figure, the purpose of which is to help finance the circuit clerk's mission as a whole rather than to reimburse the circuit clerk for any cost resulting specifically from defendant's prosecution. The graduated assessments in subsections (1)(A) to (1)(E) (705 ILCS 105/27.1a(w)(1)(A) to (E) (West 2008)) make no sense as fees. One cannot reasonably assume that every felony case is inherently more expensive for the circuit clerk than every misdemeanor case and that every misdemeanor case is inherently more expensive than every ordinance violation case.

¶ 144   Now, it likely is true that, *by and large*, felony cases are more expensive to prosecute than misdemeanor cases. But that qualifier, "by and large," is inconsistent with recouping a known, determinate expense in a particular prosecution. The schedule of assessments in section 27.1a(w)(1) (705 ILCS 105/27.1a(w)(1) (West 2008)), instead of reimbursing an incurred cost in a particular prosecution, intends to apply a rough and ready sense of fairness in distributing the burden of financing the circuit clerk's office. Felony cases tend to require more labor and resources from the circuit clerk's office than other cases, and therefore, when distributing the burden of financing the circuit clerk's office, the legislature believes it is only fair to lay the heaviest end of the burden on felons, charging them $100. That is not quite the same as saying the circuit clerk incurred an expense of $100 from any particular felony case. The intent is to finance the circuit clerk's office in an approximately equitable way, not to recoup the cost of each individual felony prosecution.

¶ 145   As the Second District observed regarding a similar assessment:

"The assessment is not explicitly tied to, and bears no inherent relationship to, the actual expenses involved in prosecuting the defendant ***. *** [T]hat the amount of the assessment is correlated directly with the severity of the offense shows that the assessment is punitive and not compensatory. A felony is not necessarily twice as expensive to prosecute as a misdemeanor, but it *is* inherently more serious in the eyes of the law." (Emphasis in original.) *People v. Smith*, 2013 IL App (2d) 120691, ¶ 21.

¶ 146    The so-called "CIRCUIT CLERK FEE," "exacted only after conviction for a criminal offense" (*Graves*, 235 Ill. 2d at 252), is in reality a fine, despite the statutory label of a "fee" (see *id.* at 251; *Jones*, 223 Ill. 2d at 583). But see *Larue*, 2014 IL App (4th) 120595, ¶ 66 (characterizing this assessment as a fee). The assessment of $100 comes from a graduated schedule of fines having a dual purpose of punishing the offender and "financing the court system." *Graves*, 235 Ill. 2d at 252.

¶ 147    Because a circuit clerk may not impose fines, we should vacate the two assessments in the amount of $100 apiece labeled "CIRCUIT CLERK FEE," and we should direct the trial court, on remand, to impose only one such fine pursuant to section 27.1a(w)(1)(A) of the Clerks Act (705 ILCS 105/27.1a(w)(1)(A) (West 2008)). See *Larue*, 2014 IL App (4th) 120595, ¶ 66.

¶ 148                                11. *"COURT SECURITY"*

¶ 149    The circuit clerk imposed two assessments of $25 labeled "COURT SECURITY." See 55 ILCS 5/5-1103 (West 2008). Section 5-1103 of the Counties Code provides as follows:

> "§ 5-1103. Court services fee. A county board may enact by ordinance or resolution a court services fee dedicated to defraying court security expenses incurred by the sheriff in providing court services or for any other court services deemed necessary by the sheriff to provide for court security, including without limitation court services provided pursuant to Section 3-6023 [(55 ILCS 5/3-6023 (West 2008))], as now or hereafter amended. Such fee shall be paid in civil cases by each party at the time of filing the first pleading, paper or other appearance; provided that no additional fee shall be required if more than one party is represented in a single pleading, paper or other appearance. In criminal, local ordinance, county ordinance, traffic and conservation cases, such fee shall be assessed against the defendant upon a plea of guilty, stipulation of facts or findings of guilty, resulting in a judgment of conviction ***. In setting such fee, the county board may impose, with the concurrence of the Chief Judge of the judicial circuit in which the county is located by administrative order entered by the Chief Judge, differential rates for the various types or categories of criminal and civil cases, but the maximum rate shall not exceed $25. All proceeds from this fee must be used to defray court security expenses incurred by the sheriff in providing court services. *** The fees shall be collected in the manner in which all other court fees or costs are collected and shall be deposited into the county general fund for payment solely of costs incurred by the sheriff in providing court security or for any other court services deemed necessary by the sheriff to provide for court security." 55 ILCS 5/5-1103 (West 2008).

¶ 150    The Champaign County board has adopted a resolution authorizing the collection of a fee in the amount of $25 for court security. Champaign County Board Resolution No. 4723, Resolution Amending the Court Services Fee for Court Security (adopted Sept. 18, 2003), *available at* http://champaigncountyclerk.com/county_board/resolutions/r04001_05000/r04723.pdf.

¶ 151    Court security is a neutral service, benefitting everyone in the courthouse, not merely the participants in defendant's criminal case. The security guards are not aligned with the prosecution any more than they are aligned with the defense. The $25 from defendant is intended to fund security not only in his case but also in the civil case down the hall. This assessment is just another way of financing the court system.

¶ 152     Because the court security assessment lacks the "*central* characteristic" of a fee–namely, the intent to "compensate the state for [a] cost[ ] incurred as the result of prosecuting the defendant" (emphasis in original) (*Jones*, 223 Ill. 2d at 600)–I conclude it is essentially a fine, despite the statutory label of a fee (*Graves*, 235 Ill. 2d at 251; *Jones*, 223 Ill. 2d at 583). A circuit clerk lacks authority to impose fines. Therefore, we should vacate the two assessments of $25 labeled "COURT SECURITY," and we should direct the trial court, on remand, to impose only one court security fine of $25, considering that there was only one "plea of guilty *** resulting in a judgment of conviction." 55 ILCS 5/5-1103 (West 2012); see *Larue*, 2014 IL App (4th) 120595, ¶ 68.

¶ 153                                 12. *"COURT FINANCE FEE"*

¶ 154     The circuit clerk imposed two assessments in the amount of $50 apiece labeled "COURT FINANCE FEE." Section 5-1101(c)(1) of the Counties Code (55 ILCS 5/5-1101(c)(1) (West 2008)) provides as follows:

> "§ 5-1101. Additional fees to finance court system. A county board may enact by ordinance or resolution the following fees:
>
>                                     * * *
>
> (c) A fee to be paid by the defendant on a judgment of guilty or a grant of supervision ***, as follows:
>
> (1) for a felony, $50[.]"

¶ 155     The Champaign County board has passed a resolution authorizing the collection of a court finance fee. Champaign County Board Resolution No. 3738, A Resolution Implementing the Court System Financing Fee (adopted Sept. 17, 1996), *available at* http://champaigncountyclerk.com/county_board/resolutions/r03001_04000/r03738.pdf.

¶ 156     The supreme court has declared the court finance assessment to be a "monetary penalt[y]," *i.e.*, a fine. *Graves*, 235 Ill. 2d at 253; see also *People v. Ackerman*, 2014 IL App (3d) 120585, ¶ 30; *Smith*, 2013 IL App (2d) 120691, ¶ 21. The circuit clerk lacks the authority to impose fines, and therefore we should vacate two assessments in the amount of $50 apiece labeled "COURT FINANCE FEE." Because the fee is to be paid "on a judgment of guilty *** for a felony" (55 ILCS 5/5-1101(c)(1) (West 2008)) and because defendant was adjudged guilty of only one felony in this case, he should have to pay only one court finance fine. We should direct the trial court, on remand, to impose one court finance fine in the amount of $50.

¶ 157     Not only should we do our duty by directing the trial court to impose all these statutorily mandated fines (see *Gutierrez*, 2012 IL 111590, ¶ 14; see *Thompson*, 209 Ill. 2d at 27), but we should give defendant an opportunity to argue the invalidity of his guilty plea. If he regards the additional fines as significant enough that he would want to withdraw his guilty plea, we should allow him to make an argument for such relief in a petition for rehearing (Ill. S. Ct. R. 367 (eff. Dec. 29, 2009)). See *People v. Whitfield*, 217 Ill. 2d 177, 202 (2005); *People v. Strom*, 2012 IL App (3d) 100198, ¶ 11.

¶ 158     Finally, I commiserate with the trial court. It is unfortunate that the legislature is apparently incapable of saying no whenever someone proposes heaping a new "fee" or "cost" on criminal defendants, who typically are impoverished. The legislature's purported goal of financing the court system on the backs of guilty defendants is actually undermined by the expense to the state of properly ascertaining the imposition of the dizzying array of fees, fines, and costs. This

elaborate partial dissent illustrates the absurdity of the task. Sentencing a defendant in a criminal case is now comparable to filling out a complicated income tax form with multiple schedules. A sentencing judge almost needs the assistance of a certified public accountant. There is little chance that the long list of assessments, accruing interest and late penalties, will ever be paid. The only suggestion I can make to beleaguered sentencing judges is that they insist the prosecutor arrive at the sentencing hearing with the fines correctly computed.