2016 IL App (4th) 140168
NO. 4-14-0168

**FILED**
March 10, 2016
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| BRANDON J. NELSON, | ) | No. 07CF1080 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John W. Belz, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court, with opinion.

Justices Steigmann and Appleton concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Brandon J. Nelson, appeals the second-stage dismissal of his postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-7 (West 2012)). Defendant argues (1) postconviction counsel failed to provide reasonable assistance by not providing necessary documentation to support his claims; (2) the Sangamon County circuit clerk, rather than the trial court, improperly imposed fines on defendant after sentencing; (3) he is entitled to 14 additional days of credit against his sentence; and (4) Illinois's statute triggering the automatic transfer of juveniles to adult court (705 ILCS 405/5-130 (West 2008)) violates the eighth amendment's prohibition against cruel and unusual punishment (U.S. Const., amend. VIII). We affirm but remand for the imposition of mandatory fines and

applicable monetary credit against those fines.

¶ 2                                    I. BACKGROUND

¶ 3         In September 2007, the State charged defendant with three counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2006)), alleging defendant tossed a concrete block on Devyn Greff's head, causing Greff's death.

¶ 4         At a jury trial, testimony established Greff, the victim, was involved in a fight with defendant's uncle, Antowin Nelson. That night, Antowin, riding his bike alone, encountered Greff and Greff's roommate, Jeremy Younker. The testimony differs on the events that led to the physical altercation but shows defendant and another male arrived at some point to assist his uncle. During the dispute, Antowin punched Greff, causing Greff to fall straight back, with his head striking the concrete. Younker believed Greff was "knocked out," because he was lying "on his back and his arms were stiff." One witness testified Greff was motionless except his teeth were chattering. Antowin left the scene, but defendant approached Greff from "around the corner" and tossed a "cinder block" onto Greff's head.

¶ 5         Dr. Jessica Bowman, a pathologist, testified Greff died from blunt-force trauma to his head. She opined the trauma causing Greff's death occurred when the concrete block struck Greff. Dr. Bowman stated Antowin's punch did not cause Greff's death.

¶ 6         The jury found defendant guilty. He was sentenced to a prison term of 40 years, with credit for 855 days presentence custody. Defendant pursued a direct appeal, and this court affirmed defendant's conviction and sentence. *People v. Nelson*, 2011 IL App (4th) 100096-U, ¶ 3. A detailed summary of the trial testimony appears in that disposition. See *id.*

¶ 7         In July 2012, defendant filed a *pro se* petition under the Act, asserting claims of

ineffective assistance of counsel and actual innocence. Defendant asserted trial counsel provided ineffective assistance by not challenging Dr. Bowman's credentials. Defendant also asserted the evidence showed Greff suffered two blows to his head before he was struck by the concrete block: Antowin's punch and the resulting fall. Defendant emphasized Greff's teeth were chattering before the cinder block landed on his head, and "teeth-chattering is a sign of traumatic brain injury." Defendant attached to his petition multiple newspaper articles regarding Dr. Bowman and printouts from websites, showing teeth chattering may indicate traumatic brain injury (see, *e.g.*, *Tremor*, Wikipedia, https://en.wikipedia.org/wiki/Tremor (last visited Feb. 29, 2016). In August 2012, counsel was appointed to represent defendant in postconviction proceedings.

¶ 8       In October 2013, postconviction counsel filed an amended petition. Postconviction counsel argued, in part, trial counsel was ineffective for failing to hire an independent expert to rebut Dr. Bowman's testimony and appellate counsel was ineffective for not raising the issue on direct appeal. Counsel also maintained trial counsel's performance was deficient because he did not emphasize Dr. Bowman lacked board certification and Greff sustained multiple blows to his head before his death. Counsel asserted, had trial counsel retained another pathologist, "there is a reasonable probability that the jury could have determined that the killing blow was Mr. Greff's head striking the concrete immediately following [Antowin's] punch." Counsel emphasized Dr. Bowman did not opine whether Greff could have suffered the fatal injury when his head struck the concrete driveway.

¶ 9       The State moved to dismiss defendant's petition. The State argued, in part, defendant's contentions regarding Dr. Bowman's testimony were conclusory and defendant failed

to allege any facts supporting an evidentiary hearing. The trial court determined defendant provided no facts to support his allegations, found no substantial violation of defendant's constitutional rights, and dismissed the amended petition.

¶ 10     This appeal followed.

¶ 11                    II. ANALYSIS

¶ 12          A. Reasonable Assistance of Postconviction Counsel

¶ 13     On appeal, defendant first argues postconviction counsel provided unreasonable assistance when he failed to make necessary amendments to the *pro se* postconviction petition to present adequately his claim regarding Dr. Bowman's findings. Defendant contends counsel failed to provide reasonable assistance because he did not attach affidavits to satisfy the prejudice prong of *Strickland v. Washington*, 466 U.S. 668 (1984).

¶ 14     The Act provides a means by which criminally convicted individuals may argue their convictions resulted from a substantial denial of their constitutional rights. *People v. Hodges*, 234 Ill. 2d 1, 9, 912 N.E.2d 1204, 1208 (2009). Proceedings under the Act are initiated by the filing of a petition that "clearly set[s] forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2012). At this stage, although a petitioner need only provide a limited amount of detail in his petition, the petitioner is not excused from providing factual details surrounding the alleged constitutional deprivation. *People v. Delton*, 227 Ill. 2d 247, 254, 882 N.E.2d 516, 519-20 (2008). Section 122-2 of the Act requires the petitioner to attach factual documentation to support the petition or explain the absence of such documentation. 725 ILCS 5/122-2 (West 2012). Such documentation "must identify with reasonable certainty the sources, character, and availability of the alleged evidence supporting

the petition's allegations." *Delton*, 227 Ill. 2d at 254, 882 N.E.2d at 520. The failure to attach such documentation or explain its absence justifies dismissal of the petition at the first stage of proceedings. *People v. Collins*, 202 Ill. 2d 59, 66, 782 N.E.2d 195, 198 (2002).

¶ 15    If the petition is not dismissed at the first stage, it advances to the second stage, where, if necessary, the court appoints counsel for the petitioner. *People v. Snow*, 2012 IL App (4th) 110415, ¶ 14, 964 N.E.2d 1139. At this stage, appointed counsel is expected to ensure the petitioner's complaints are adequately presented and to provide reasonable assistance. *People v. Suarez*, 224 Ill. 2d 37, 42, 46, 862 N.E.2d 977, 979-80, 982 (2007). To meet these goals, our supreme court drafted Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). The rule requires appointed counsel to consult with the petitioner to ascertain his contentions, examine the record of the trial proceedings, and make any amendments to the *pro se* petition necessary for an adequate presentation of the petitioner's complaints. *People v. Kuehner*, 2015 IL 117695, ¶ 20, 32 N.E.3d 655.

¶ 16    Rule 651's mandate requiring counsel to make necessary amendments is not limitless. For example, case law establishes counsel is "under no obligation to actively search for sources outside the record that might support general claims raised in a post-conviction petition." *People v. Johnson*, 154 Ill. 2d 227, 247, 609 N.E.2d 304, 314 (1993). Our supreme court also held, if a *pro se* petitioner fails to specify a particular witness to support a claim, appointed counsel is under no obligation to go on a "fishing expedition" to find a witness. *Id.* at 247-48, 609 N.E.2d at 314.

¶ 17    Analogous to this case, our supreme court held, in *People v. Williams*, 186 Ill. 2d 55, 61, 708 N.E.2d 1152, 1155 (1999), Rule 651(c) does not require appointed counsel to

provide an affidavit or other documentation from an unidentified expert witness. In *Williams*, the defendant, convicted of murder, filed a *pro se* postconviction petition, alleging, "trial counsel was ineffective for failing to obtain the assistance of a blood-type expert to type the blood on [the victim's] clothing." *Id.* at 59, 708 N.E.2d at 1154. The trial court appointed counsel, who filed an amended postconviction petition which included the above claim, but counsel did not attach affidavits to the amended petition. *Id.* On appeal from the dismissal of his postconviction petition, the *Williams* defendant argued his postconviction counsel failed to comply with Rule 651(c) by not supporting the claims in the amended petition with affidavits or other evidence. *Id.* The *Williams* court, relying on *Johnson*, found postconviction "counsel clearly had no obligation to seek out a blood-type expert." *Id.* at 61, 708 N.E.2d at 1155. The court held "[d]efendant, not his appointed post-conviction counsel, was responsible for providing this information." *Id.*

¶ 18        Defendant contends this court should not follow *Williams*, but should apply *People v. Turner*, 187 Ill. 2d 406, 719 N.E.2d 725 (1999), released six months after *Williams*. Defendant maintains the *Turner* decision shows postconviction counsel's conduct was unreasonable because he failed to support with affidavits the allegation the petitioner was prejudiced.

¶ 19        *Turner*, involving multiple failures by appointed counsel, is distinguishable. In *Turner*, counsel was appointed at the second stage of proceedings but did not amend the *pro se* petition. *Id.* at 409, 719 N.E.2d at 727. The trial court dismissed the postconviction petition upon finding the claims were barred by *res judicata* or waived because the petitioner could have raised the claims earlier. *Id.* On appeal, the petitioner argued he was denied his right to reasonable assistance of counsel because appointed counsel failed to amend the petition to

- 6 -

preserve his claims. *Id.* at 412, 719 N.E.2d at 729. The court agreed, concluding appointed counsel made multiple errors in not amending the petition. The court first found counsel failed to provide reasonable assistance by not making a simple change to preclude the trial court's finding of waiver. *Id.* at 412-13, 719 N.E.2d at 729. The court found, "[i]f petitioner's counsel had amended the post-conviction petition to allege ineffective assistance of appellate counsel for failing to raise petitioner's claims on direct appeal, these claims would not have been barred by waiver." *Id.* at 413, 719 N.E.2d at 729. The court further noted appointed counsel "failed to amend the petition to include an allegation that petitioner was prejudiced by the allegedly ineffective assistance of his trial counsel." *Id.* Last, the court noted appointed counsel failed to attach any affidavits to support the claims or offer any explanation for their absence. *Id*. at 414, 719 N.E.2d at 729-30. Based on "the totality of circumstances in this case," the court held appointed counsel's performance was unreasonable. *Id.*

¶ 20        *Turner* does not undermine *Williams*'s applicability to this case. *Turner*'s finding of unreasonable representation involved multiple facts not present here. Appointed counsel in *Turner* "failed to make a routine amendment to the post-conviction petition which would have overcome the procedural bar of waiver and elected to stand on a *pro se* petition, which omitted essential elements of petitioner's constitutional claims and contained virtually no evidentiary support." *Id.* In contrast, *Williams* involves only one: whether appointed counsel had an obligation to seek an expert to support the *pro se* claims when the defendant has not met his burden of providing such evidence. *Williams*, 186 Ill. 2d at 61, 708 N.E.2d at 1155.

¶ 21        *Williams* controls. Following *Williams*, we find postconviction counsel did not fail to provide reasonable representation by failing to conduct a search to find an expert who

would support defendant's claims.

¶ 22                    B.  Fines Imposed by the Circuit Clerk

¶ 23         Defendant next contends this case must be remanded for the proper assessment of fines.   Defendant argues the trial court, after imposing a 40-year sentence, ordered "court costs." Defendant maintains the circuit clerk, rather than the trial court, assessed multiple fines, including a $50 "Court Systems" fine and a $5 "Child Advocacy" fine, and did not apply the proper credit to those fines.   According to defendant, these assessments are improper under *People v. Folks*, 406 Ill. App. 3d 300, 306, 943 N.E.2d 1128, 1133 (2010).

¶ 24         The State concedes the error and agrees the case must be remanded to the trial court to impose the correct assessments and determine monetary credit.  We note the State does not address defendant's arguments regarding each specific fine.

¶ 25         We agree defendant's fines must be vacated.  The imposition of fines is a judicial act.  *People v. Alghadi*, 2011 IL App (4th) 100012, ¶ 20, 960 N.E.2d 612.  Circuit clerks have no authority to impose fines, even those that are mandatory.  *Id.*  Fines imposed by circuit clerks are "void from their inception."  *Id.*  Void judgments may be challenged at any time and do "not depend on the Post-Conviction Hearing Act for [their] viability."  *People v. Brown*, 225 Ill. 2d 188, 199, 866 N.E.2d 1163, 1169 (2007).  We therefore vacate the fines imposed on defendant and remand for the imposition of mandatory fines and the determination of applicable credit against those fines.

¶ 26                    C.  Sentence Credit for Time Spent in Custody

¶ 27         Defendant next argues the trial court failed to credit him properly for time he spent in custody awaiting trial under section 5-8-7(b) of the Unified Code of Corrections (730

ILCS 5/5-8-7(b) (West 2006)). Defendant maintains he is entitled to credit for 869 days, 14 days more than the 855 days for which he received credit. Defendant acknowledges he is raising this issue for the first time on appeal from the dismissal of his postconviction petition, but contends he may properly do so under *People v. Roberson*, 212 Ill. 2d 430, 440, 819 N.E.2d 761, 767 (2004), and *People v. Caballero*, 228 Ill. 2d 79, 83-84, 885 N.E.2d 1044, 1046-47 (2008).

¶ 28 The State does not challenge defendant's computation of time spent in presentence custody, but argues defendant may not raise the statutory claim under the Act. In support, the State relies on three appellate decisions: *People v. Bates*, 179 Ill. App. 3d 705, 534 N.E.2d 1019 (1989) (Fourth District), *People v. Uran*, 196 Ill. App. 3d 293, 553 N.E.2d 758 (1990) (Third District), and *People v. Reed*, 335 Ill. App. 3d 1038, 782 N.E.2d 955 (2003) (Fourth District). In each of these cases, the courts held the postconviction petitioners were barred from seeking additional sentencing credit— a statutory claim—under the Act. See *Bates*, 179 Ill. App. 3d at 709, 534 N.E.2d at 1021 (concluding "the issue is not of constitutional stature"); *Uran*, 196 Ill. App. 3d at 294, 553 N.E.2d at 759-60 ("For the trial court to obtain jurisdiction over a post-conviction petition, the petitioner must allege a substantial denial of his constitutional rights."); *Reed*, 335 Ill. App. 3d at 1040, 782 N.E.2d at 956-57 ("We have consistently held such issues are statutory only and not of constitutional magnitude and, thus, not subject to scrutiny under the [Act].").

¶ 29 Although the record establishes defendant is entitled to credit for 14 additional days spent in custody, the issue is whether this court has the power to grant defendant the credit he seeks. According to the Supreme Court of Illinois, the Act, by which defendant pursues this claim, is "jurisdictional in nature," limiting "the subject matter reviewable under that Act."

*People v. Ferree*, 40 Ill. 2d 483, 484, 240 N.E.2d 673, 674 (1968). The jurisdiction granted by the Act is limited to situations in which " 'a substantial denial of rights under the Constitution of the United States or of the State of Illinois' is alleged." *People v. Owens*, 34 Ill. 2d 149, 150, 214 N.E.2d 749, 750 (1966) (quoting Ill. Rev. Stat. 1963, ch. 38, § 122-1); see also *People v. Ward*, 48 Ill. 2d 117, 120, 268 N.E.2d 692, 694 (1971). More recently, in *People v. Mitchell*, 189 Ill. 2d 312, 329, 727 N.E.2d 254, 265 (2000), the court did not use the term "jurisdiction," but recognized "the allegation of a deprivation of a statutory right is not a proper claim under the Act."

¶ 30    Despite these holdings, defendant relies on two cases, *Roberson* and *Caballero*, as establishing this court has authority to grant him the relief he requests on an appeal under the Act. Defendant cites both cases after quoting *Roberson* for the following proposition: A sentence that fails to credit the defendant for time in custody "is void and may be challenged at any time." *Roberson*, 212 Ill. 2d at 440, 819 N.E.2d at 767.

¶ 31    *Roberson*'s statement, however, no longer reflects the law in Illinois. The *Roberson* court, upon pronouncing such sentences void, relied on its earlier decision, *People v. Arna*, 168 Ill. 2d 107, 113, 658 N.E.2d 445, 448 (1995). See *Roberson*, 212 Ill. 2d at 440, 819 N.E.2d at 767. *Arna* pronounces the void sentencing rule—a rule recently abrogated by *People v. Castleberry*, 2015 IL 116916, ¶ 15, 43 N.E.3d 932. In *Castleberry*, the Court held "the failure to comply with a statutory requirement or prerequisite does not negate the circuit court's subject matter jurisdiction." (Internal quotation marks omitted.) *Id.* Thus, the trial court's failure to impose the proper sentence credit in this case does not make his sentence void and challengeable at any time.

- 10 -

¶ 32       *Caballero* also does not establish this court has authority to grant defendant's request for section 5-8-7(b) sentence credit pursuant to a claim brought under the Act.  In *Caballero*, the issue on appeal was whether a court of review may grant the *per diem* credit of section 110-14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-14 (West 2002)) to a petitioner who first requests the credit on appeal from the dismissal of his postconviction petition under the Act.  *Caballero*, 228 Ill. 2d at 81, 885 N.E.2d at 1048.  Section 110-14 provides "[a]ny person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant."  725 ILCS 5/110-14 (West 2002).

¶ 33       In analyzing this claim, the *Caballero* court noted no cases in Illinois covered the issue before it, but observed three appellate court cases, *People v. Wren*, 223 Ill. App. 3d 722, 585 N.E.2d 1216 (1992) (Fifth District), *People v. Andrews*, 365 Ill. App. 3d 696, 850 N.E.2d 888 (2006) (Third District), and *People v. Brown*, 371 Ill. App. 3d 972, 864 N.E.2d 767 (2007) (First District), dealt with sentencing credit under section 5-8-7(b).  *Caballero*, 228 Ill. 2d at 83-84, 885 N.E.2d at 1046.  The court then observed it found "the rationale of *Wren*, *Andrews* and *Brown* *** persuasive to the issue of an application for a monetary credit under section 110-14 being raised for the first time on an appeal in a postconviction hearing."  *Id.* at 84, 885 N.E.2d at 1047.  The *Caballero* court observed *Wren* found it could grant such credit " 'in the interests of an orderly administration of justice' [citation]" and treat the request as a motion to amend the sentencing judgment. (Internal quotation marks omitted.)  *Id.* (quoting *Wren*, 223 Ill. App. 3d at 731, 585 N.E.2d at 1216).  The court summarized *Andrews* as following *Wren* and concluding *Wren* was "better reasoned" than *Reed* and more judicially efficient.  *Id.* at 85, 885 N.E.2d at

1047 (citing *Andrews*, 365 Ill. App. 3d at 700, 850 N.E.2d at 888). Regarding the *Brown* decision, the *Caballero* court observed the *Brown* court considered the issue on remand following a supervisory order that directed the appellate court to permit "the State another opportunity to respond to defendant's request for additional sentencing credit; to determine the merits of defendant's sentencing-credit request and to grant him further sentencing credit, if required." *Id.* at 86, 885 N.E.2d at 1048. The *Brown* court followed *Andrews* and ordered the sentencing judgment corrected, upon acknowledging the State did not dispute the sentencing-credit issue. *Id.* at 86-87, 885 N.E.2d at 1048.

¶ 34    The *Caballero* court then addressed the appellate court decisions of *Bates*, *Uran*, and *Reed* and their holdings "a claim for sentencing credit under section 5-8-7(b) of the Unified Code involves a statutory right and is not cognizable in a postconviction proceeding." *Id.* at 87, 885 N.E.2d at 1048. Tellingly, the *Caballero* court did not find these decisions erroneous. Instead, the court applied similar reasoning and found section 110-14, like section 5-8-7(b), was a statutory claim not cognizable under the Act. *Id.* The court then, relying on the language of section 110-14, found section 110-14 expressly permitted the award of credit on " 'application of the defendant' " without a limitation on when the application may be made. *Id.* at 87-88, 885 N.E.2d at 1049.

¶ 35    The court then stated its holding as follows:

"While we hold that a claim for monetary credit under section 110-14 is a statutory claim and therefore not cognizable as a separate issue upon which to base relief under the [Act], we also hold that this statutory claim may be considered as an 'application

- 12 -

of the defendant' made under the statute and may be raised at any time and at any stage of court proceedings, even on appeal in a postconviction proceeding. Accordingly, if, as in this case, the basis for granting the application of the defendant is clear and available from the record, the appellate court may, in the 'interests of an orderly administration of justice,' grant the relief requested."

*Id.* at 88, 885 N.E.2d at 1049.

¶ 36 A petition for presentence credit under section 5-8-7(b) raised on appeal from the dismissal of a postconviction petition does not satisfy both prerequisites in the holding of *Caballero*. Section 5-8-7(b) mandates "[t]he offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for time spent in custody as a result of the offense for which the sentence was imposed." 730 ILCS 5/5-8-7(b) (West 2006). No language authorizes an "application of defendant" at any time. The only circumstance in this case that mirrors the one in *Caballero* is that the "interests of an orderly administration of justice" favor resolving the issue before it instead of requiring additional court filings. *Caballero*, however, simply does not hold the jurisdictional limitations of the Act may be ignored to consider all statutory claims when "the interests of an orderly administration of justice" favor it.

¶ 37 We disagree with defendant's interpretation of the last sentence of the above quote. Defendant maintains the sentence authorizes this court to grant him relief so long as the basis for his request is clear and available from the record and the interests of an orderly administration of justice favor the award of credit.

¶ 38    We do not read the sentence so broadly.  The last sentence is limited to section 110-14 claims.  The sentence before it specifically addresses section 110-14, recognizing it is a statutory claim permitted under the Act because of its language permitting an "application of the defendant."  The last sentence, on which defendant relies, follows with key words that link the two requisites together, such as "[a]ccordingly," "as in this case," and "application of the defendant."

¶ 39    Defendant has not established this court has jurisdiction over his statutory claim. We adhere to our precedent in *Bates* and *Reed* and find we cannot grant him the relief he seeks. Defendant is not, however, left without remedy.  He may petition the trial court to correct the simple error in arithmetic, as trial courts retain jurisdiction to correct nonsubstantial matters of inadvertence or mistake.  See *Baker v. Department of Corrections*, 106 Ill. 2d 100, 477 N.E.2d 686 (1985).

¶ 40         D.  The Constitutionality of the Automatic-Transfer Statute

¶ 41    Defendant, who was 17 years old at the time of the offense, last argues his automatic transfer under section 5-130 of the Juvenile Court Act of 1987 (705 ILCS 405/5-130 (West 2008)) to adult criminal court violates the eighth amendment of the Constitution (U.S. Const., amend. VIII).  Defendant recognizes the supreme court recently rejected a similar claim and found section 5-130 constitutional (see *People v. Patterson*, 2014 IL 115102, ¶¶ 100-11, 127, 25 N.E.526), but asserts he is raising the argument to preserve the issue for federal review.

¶ 42    Given defendant's concession, we need not summarize and address defendant's arguments on this issue.  Defendant's arguments are substantially similar to those raised and found insufficient in *Patterson*.  Because *Patterson* is binding on this court, defendant's

challenge to the constitutionality of section 5-130 fails.

¶ 43                                III. CONCLUSION

¶ 44         We affirm the trial court's dismissal of defendant's amended postconviction petition.  We vacate the fines imposed by the circuit clerk and remand to the trial court for the assessment of mandatory fines and the application of appropriate credit against those fines.  As part of our judgment, we grant the State its statutory assessment of $50 against defendant as costs of this appeal.

¶ 45         Affirmed in part and vacated in part; cause remanded with directions.