2016 IL App (4th) 121049-B

NO. 4-12-1049

FILED
May 9, 2016
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| THOMAS BREEDEN, | ) | No. 10CF63 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Knecht and Justice Appleton concurred in the judgment and
opinion.

**OPINION**

¶ 1       The trial court sentenced defendant, Thomas Breeden, to 58 months' imprison-

ment for failure to register as a sex offender (730 ILCS 150/6 (West 2008)).  He appealed, argu-

ing the sentence was excessive.  On appeal, this court affirmed the trial court's sentencing deci-

sion, finding no abuse of discretion.  *People v. Breeden*, 2014 IL App (4th) 121049, ¶ 59.

¶ 2       Also on appeal, the State maintained that three of the monetary assessments in

defendant's case were void because the circuit clerk, rather than a judge, imposed them and be-

cause case law regarded them as fines.  Specifically, it challenged the assessments of $10 for

"Arrestee's Medical" (730 ILCS 125/17 (West 2008)), $10 for "St Police Services" (705 ILCS

105/27.3a(1.5), (5) (West 2010)), and $5 for "Drug Court Program" (55 ILCS 5/5-1101(f) (West

2008)).  The State further asserted that a fourth assessment, a fine of $255 under section 10 of the

Sex Offender Registration Act (730 ILCS 150/10 (West 2008)), was void because even though a judge imposed it, the fine was less than the minimum amount of $500 that section 10 required. Defendant agreed with the State's arguments. On review, we vacated the four fines referenced by the parties and remanded the case to the trial court with directions that it calculate and directly impose any mandatory fines, including a sex offender registration fine in the amount of $500, and apply any monetary credit to which defendant was entitled. *Breeden*, 2014 IL App (4th) 121049, ¶ 59.

¶ 3        On January 20, 2016, the supreme court denied a petition for leave to appeal filed by defendant but directed this court to vacate our judgment in the case and reconsider the matter in light of *People v. Castleberry*, 2015 IL 116916, to determine whether a different result is warranted. In accordance with the supreme court's direction, we vacate our prior judgment and reconsider the matter in light of *Castleberry*. After reconsideration, we vacate the three fines identified by the parties as improperly assessed by the circuit clerk (the $10 "Arrestee's Medical" fine, the $10 "St Police Services" fine, and the $5 "Drug Court Program" fine) and remand to the trial court for imposition of the mandatory fines and the application of appropriate credit against those fines. We otherwise affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5                              A. The Original Charge

¶ 6        On January 15, 2010, the State filed an information against defendant in Champaign County, charging that on or about October 5, 2009, he violated section 6 of the Sex Offender Registration Act (730 ILCS 150/6 (West 2008)) in that, being a "sex offender" within the meaning of section 2(A) (730 ILCS 150/2(A) (West 2008)), he failed to "register in person with the new agency of jurisdiction" within three days after changing his residence.

¶ 7                                    B. The Negotiated Guilty Plea

¶ 8          In a hearing on April 27, 2010, defendant said he wanted to plead guilty to the charge of failing to register as a sex offender.  The trial court admonished him, telling him, among other things, the minimum and maximum punishments for the offense.  The court said:

>           "THE COURT:  This is a Class 3 felony.
>
>           Standard penalty range, counsel?
>
>           MR. KANIS [(prosecutor)]:  Standard range.
>
>           THE COURT:  Means you can be sent to prison for not less than two, nor more than five years, followed by a period of manda- tory supervised release of one year.  Maximum fine could be up to 25 thousand dollars."

¶ 9          After confirming with defendant that he understood all the rights he would be giv- ing up by pleading guilty and that he was pleading guilty of his own free will, the trial court asked counsel if there were any agreements.  An assistant State's Attorney, Chris Kanis, replied:

>           "MR. KANIS:  Your Honor, in exchange for Defendant's plea of guilty to Count I, be sentenced to probation for a period of 24 months.  Serve 18 days in the county correctional center.  Credit for nine days served, making this a time-served plea.  Pay a fine of three hundred dollars and court costs.  A local anticrime assess- ment fee of ten dollars.  Violent Crime Victims Assistance Act Fee.  Probation service fee to be set by the Court.  Genetic marker grouping analysis fee of two hundred dollars.  Total 45 dollars credit against any fines for time spent in custody.  And comply

with [deoxyribonucleic acid (DNA)] reporting requirements and statute.

THE COURT: Ms. Propps [(defense counsel)], is that the agreement?

MS. PROPPS: Yes, Your Honor.

THE COURT: Mr. Breeden, is that the agreement that you have with the State?

DEFENDANT: Yes, sir."

¶ 10 In response to the trial court's queries, defendant denied anyone had promised him anything else, and he denied he had been forced or threatened. Upon defendant's reaffirmation of his desire to plead guilty to the charge of failure to register as a sex offender, the court accepted his guilty plea.

¶ 11 The trial court proceeded immediately to sentencing. After hearing the prosecutor's brief summary of defendant's criminal record, the court imposed the following sentence:

"THE COURT: We'll show the Defendant is sentenced to a period of probation for 24 months, subject to the standard conditions which will include 18 days in custody with credit for nine served. He has the monetary obligations due and owing, with a probation service fee fixed in the amount of 15 dollars per month.

If he's not already done so, he'll submit specimens of blood, saliva, or tissue to the Department of State Police."

¶ 12 The written sentencing order, dated and entered the same day, incorporated the terms of the plea agreement and stated the probation service fee would be $15 per month, but it

did not specify the amount of the Violent Crime Victims Assistance fee. The order required defendant to "pay all fines, fees and costs as authorized by statute" and to pay all financial obligations within 180 days.

¶ 13 A docket entry dated the same day, April 27, 2010, said: "Fine + Cost Fee $1604.55 Signed Judge DIFANIS THOMAS J." In addition to the 24 months of probation; the 18 days in jail; the credit for 9 days; and the submission of blood, saliva, and tissue specimens, the docket entry imposed the following monetary assessments:

| | |
|---|---|
| "Fine + Cost | 519.55 |
| PROBATION MONITORIN | 360.00 |
| PUBLIC DEFENDER | 450.00 |
| ST POLICE SERVICES | 10.00 |
| CRIME STOPPERS | 10.00 |
| STATE OFFENDER DNA | .00 |
| SEXUAL OFFENDER REG | 255.00." |

¶ 14 The record contains a printout from the offender DNA database of the Illinois State Police. According to the printout, defendant had already submitted a DNA specimen. He did so on June 2, 1997.

¶ 15 C. The Revocation of Probation

¶ 16 On April 23, 2012, the State filed a petition to revoke defendant's probation. According to the petition, one of the conditions of probation was that he refrain from violating any criminal statute. The petition alleged that on April 3, 2012, he violated this condition by violating two subsections of section 11-9.4-1 of the Criminal Code of 1961 (720 ILCS 5/11-9.4-1 (West 2010)). He allegedly violated subsection (b) (720 ILCS 5/11-9.4-1(b) (West 2010)) by

knowingly being present in a public park, Lincoln Park, in Danville. He allegedly violated subsection (c) (720 ILCS 5/11-9.4-1(c) (West 2010)) by knowingly loitering on a public way within 500 feet of Lincoln Park. (Even though the violation of probation occurred in Vermilion County, the Champaign County circuit court has jurisdiction because the original offense of failure to register as a sex offender occurred in Champaign County.)

¶ 17 On August 1, 2012, the trial court held a hearing on the State's petition to revoke probation. Defense counsel told the trial court "this [was] going to be an admission and stipulation." After admonishing defendant and confirming that his admission was voluntary (see Ill. S. Ct. R. 402A(a), (b) (eff. Nov. 1, 2003)), the court said it was ready to hear the factual basis (see Ill. S. Ct. R. 402A(c) (eff. Nov. 1, 2003)).

¶ 18 The prosecutor represented that the evidence would show the following. Around April 3, 2012, defendant was in the process of trying to buy a car from Wright Motors, a retail merchant in Danville. Wright Motors had lent him a vehicle to use temporarily, pending the sale. The sale fell through, and Wright Motors requested defendant to give back the vehicle it had lent him. In telephone conversations with Wright Motors, defendant falsely said that he was in Bloomington and that he was unable to return the vehicle. One of the managers of Wright Motors, a man named Carter, went to Lincoln Park to pick up his three-year-old son, and he noticed the loaner vehicle parked in a parking lot within 500 feet of the park. He approached the vehicle and saw defendant sitting inside it. Carter called two other employees of Wright Motors, who then repossessed the vehicle from defendant. Someone also called the police, and the police arrived and placed defendant under arrest. Defendant admitted he had lied to Wright Motors about his location, and he admitted being in the park.

¶ 19    The trial court asked defense counsel if she believed the State had witnesses who, if called, would testify substantially as indicated in the factual basis. Defense counsel answered yes. The court accepted defendant's admission and stipulation to the allegations in the petition to revoke probation, and the court revoked his probation. The court also ordered a presentence investigation report and a sex offender evaluation.

¶ 20                    D. The Presentence Investigation Report

¶ 21    A probation officer, Jeremy M. Jessup, wrote a presentence investigation report, dated September 24, 2012. According to the report, defendant was 46 years old. He had an eleventh-grade education and lacked a general equivalency diploma. He was currently unemployed because of an injury, torn ligaments and tendons in his right ankle, which disabled him from walking on an incline of 45 degrees or more. From March 2007 to November 2011 he worked as a grain mover until his employer fired him because of the limitations imposed by his ankle injury. From 2005 to 2007 he worked through Labor Ready. He was now surviving on food stamps. He had not applied for disability because he preferred to be employed.

¶ 22    Defendant had the following previous felony convictions. In September 1989, the La Salle County circuit court sentenced him to two years' imprisonment for forgery and three years' imprisonment for violation of bail bond. In July 1997, the McLean County circuit court sentenced him to two consecutive terms of nine years' imprisonment for two counts of predatory criminal sexual assault of a child.

¶ 23    Also, from October 1989 to May 1997, defendant was convicted and sentenced 14 times for driving while his driver's license was suspended. In April 1996, the McLean County circuit court sentenced him to 24 months' probation for misdemeanor domestic battery. The court revoked this probation because of his commission of a new offense, *i.e.*, driving while his

driver's license was suspended, and resentenced him to 240 days in jail, with credit for 240 days. The probation was "terminated unsuccessfully."

¶ 24        Jessup wrote:

"To date, [defendant] has been sentenced to terms of incarceration in either the Illinois Department of Corrections or local county jails on 11 occasions including the jail term imposed in this case. He has also been afforded community-based sentences of Conditional Discharge or Probation on seven occasions. Although records were difficult to locate and limited due to the age of many of the convictions, it appears the defendant failed to comply with conditions, financial in many cases, in all of the community-based sentences."

¶ 25        Because defendant continued to reside in Danville, the Vermilion County probation officer, Patrina Smith, agreed in May 2010 to provide "courtesy supervision" while defendant served his 24-month probation for failure to register as a sex offender. Jessup wrote:

"All progress reports were positive until 4/03/12 when the defendant was arrested by Danville Police for being present in a public park while children were present. On 9/12/12, this officer spoke with Officer Smith via telephone. Officer Smith indicated the defendant's compliance was problematic around April 2012 to include missing scheduled office visits and home visits. However, since approximately May 2012, his compliance and performance

- 8 -

has [*sic*] improved and she currently has no compliance problems with him."

¶ 26     Defendant missed his appointment, however, for a sex offender risk assessment. Jessup wrote:

> "The defendant has never participated in Sex Offender Treatment.  He was ordered to obtain a Sex Offender Risk Assessment pursuant to this matter.  This officer directed the defendant in writing to meet with Michael Kleppin at the Court Services Office, at no cost to the defendant, on 8/24/12 at 9:00 am.  [Defendant] contacted this officer on 9/18/12[,] acknowledging he failed to keep the 8/24/12 appointment with Mr. Kleppin.  He was provided Mr. Kleppin's contact information and instructed to contact him directly to reschedule."

As of the date of the report, Jessup had "no information verifying the defendant ha[d] in fact rescheduled with Mr. Kleppin."

¶ 27     Later, on September 24, 2012, in an addendum to the presentence investigation report, Jessup wrote:

> "On 9/19/12, this officer was able to verify with Mr. Kleppin that [defendant] had contacted him and rescheduled the assessment.  It is this officer's understanding the meeting with Mr. Kleppin is now set for 10/09/12 at 9:00 am at the Court Services Office.  This officer anticipates the Sex Offender Risk Assessment

report would be available in mid to late November 2012 provided [defendant] keeps the 10/09/12 appointment."

¶ 28                                E. The Resentencing Hearing

¶ 29        On September 24, 2012, the trial court held a hearing for the purpose of resentencing defendant for the original offense of failing to register as a sex offender.

¶ 30        An assistant State's Attorney, Troy Lozar, recommended imprisonment for 48 months, considering defendant's criminal history, his lie to Wright Motors, and his failure to attend the appointment with Kleppin.

¶ 31        Defense counsel, Jamie Propps, recommended another community-based sentence.  She observed:

> "MS. PROPPS:  Your Honor, first and foremost, my client did take responsibility in pleading guilty to the original offense and, once again, by stipulating to the petition to revoke.
>
> I would also ask the Court to note that my client has only been admonished with regard to standard range sentencing in this case as opposed to extended term sentencing.
>
> MR. LOZAR:  If that is the case, then I will retract my recommendation, Judge, and recommend 36.  I am sorry.  Excuse me. Counsel is correct, and I apologize for interrupting.  It remains 48 for two to five.  My apologies to both counsel and to the court."

¶ 32        Most of defendant's criminal history consisted of traffic offenses, defense counsel argued, and except for the original offense in 2010, the felony convictions were old.  Other than some noncompliance in April 2012, when defendant was arrested for being in a public park, the

probation officer in Vermilion County had experienced no problems with him. Despite his ankle injury, defendant chose to work instead of applying for disability, and defense counsel presented a letter from David McGarvey of Sweep-a-Lot stating that since September 14, 2012, defendant had in fact been working at least 40 hours a week as a sweeper driver. Although defense counsel admitted that defendant had no excuse for missing his appointment with Kleppin, he had rescheduled the appointment, and he had faithfully attended his interview with Jessup.

¶ 33       Defendant made a statement in allocution, apologizing for being in the park. He added: "I mean there is circumstances, but they was—I was there. And I always try to put my best foot forward, and I know I haven't in the past, but I'm just trying to do the right thing."

¶ 34       The trial court found no statutory mitigating factor, but it found three nonstatutory mitigating factors: (1) defendant had pleaded guilty to the charge of failing to register as a sex offender, (2) he had admitted the petition to revoke his probation, and (3) he had been gainfully employed.

¶ 35       The trial court found two statutory aggravating factors: (1) defendant's criminal history and (2) the need to deter other sex offenders from failing to register.

¶ 36       The original offense, for which defendant was being resentenced—failure to register as a sex offender—remained a "probational offense" even after his admitted violation of probation. Therefore, the court observed, it was "obligated to consider a community-based sentence as the first alternative." The court said:

> "The court has to consider the circumstances surrounding
> the offense, that would be failure to register, the history, character
> and condition of the defendant, and the court has to make a call as

to whether or not he needs to be incarcerated because he's dangerous.

That is not an easy call under these circumstances. He is a convicted sex offender, two counts of predatory sexual assault. He was found in a public park when he shouldn't have been there.

But at this point it's questionable whether or not he needs to be incarcerated because he's dangerous. He is not likely to mug somebody on the street. He is not likely to commit an armed robbery, but the fact remains the offense that required him to register was an incredibly serious offense.

The other factor that the court has to consider is would a further community-based sentence deprecate the seriousness of his conduct and be inconsistent with the ends of justice.

The presentence report provides the court I believe with ample opportunity to judge his rehabilitative potential at this point. The 14 convictions for driving under suspension indicate that during that period of time that he started that, in '89, and his last driving under suspension was in '97, which was then followed by an 18-year period of incarceration to the Department of Corrections, that certainly did take him from behind the wheel and cease those type of offenses.

When you have 14 convictions for driving under suspension, that tells the court loudly and clearly that you really don't care

about the law, [']I know I am not supposed to drive but I will, I know I shouldn't be in a public park but I will.[']

And at this point I believe a further community-based sentence would deprecate the seriousness of his conduct, be inconsistent with the ends of justice. It would not pose the appropriate deterrent factor for other sex offenders who are required to register.

Therefore, I am going to sentence this defendant to a period of incarceration in the Illinois Department of Corrections. It will be for a period of 58 months. He will get credit for thirteen days heretofore served in the Champaign County Correctional Center. The defendant will also get credit for $65 for time spent in custody."

¶ 37        The written sentencing order, entered the same day, September 24, 2012, says nothing about monetary obligations, except that defendant was to "pay costs of prosecution herein." Nor does it say anything about monetary credit.

¶ 38        A docket entry for that date says in part: "Cost Only Fee $382.00 Signed Judge DIFANIS THOMAS J" and "Fines and/or Cost/Penalties and Fees In Force."

¶ 39        The record includes printouts from the circuit clerk listing additional assessments against defendant. Among them are $10 for "Arrestee's Medical," $10 for "St Police Services," and $5 for "Drug Court Program."

¶ 40                        F. The Motion To Reduce the Sentence

- 13 -

¶ 41        On September 26, 2012, defendant filed a motion to reduce the sentence. For essentially four reasons, he argued the sentence of 58 months' imprisonment was too severe. First, although he had been unemployed for a substantial time between 2009 and 2011 because of his work-related injury, he had recently obtained gainful employment and was employed full-time as of the date of the sentencing hearing. Second, his criminal history consisted mostly of "traffic or property offenses or offenses that [were] over ten years old." Third, failure to register as a sex offender was a nonviolent crime. Fourth, all probation progress reports from April 27, 2010, to April 3, 2012, were positive.

¶ 42        In a hearing on November 9, 2012, the trial court denied the motion to reduce the sentence.

¶ 43        This appeal followed.

¶ 44                              II. ANALYSIS

¶ 45                         A. The Severity of the Sentence

¶ 46        We should disturb a sentence only if we find it to be an abuse of discretion. *People v. Perruquet*, 68 Ill. 2d 149, 153 (1977). This is the most deferential standard of review known to the law. *People v. Crane*, 195 Ill. 2d 42, 50 (2001). To be an abuse of discretion, a decision must be clearly illogical, arbitrary, unreasonable, contrary to law, or not the product of conscientious judgment. *People v. Covington*, 395 Ill. App. 3d 996, 1002-03 (2009). Even if we ourselves would have given more weight to the mitigating factors and less weight to the aggravating factors if we were the trial court, that fact would not be enough to justify interfering with the trial court's sentencing decision. *People v. Alexander*, 239 Ill. 2d 205, 213 (2010); *People v. Coleman*, 166 Ill. 2d 247, 261-62 (1995). Rather, the sentence would have to be outside "the bounds of reason." (Internal quotation marks omitted.) *Covington*, 395 Ill. App. 3d at 1002-03.

¶ 47 Defendant contends that, for five reasons, it was an abuse of discretion to impose upon him a prison sentence of 58 months, a length of time only two months less than the statutory maximum. See 730 ILCS 150/10(a) (West 2010) (failure to register as a sex offender is a Class 3 felony); 730 ILCS 5/5-4.5-40(a) (West 2010) ("The sentence of imprisonment shall be a determinate sentence of not less than 2 years and not more than 5 years [(60 months)].").

¶ 48 First, according to defendant, the trial court "call[ed] it 'questionable' whether [he] should receive a sentence of probation or incarceration in the first place." Actually, that is not what the court said. Defendant has edited out an important qualifier, the clause "because he's dangerous." The court said:

> "[T]he court has to make a call as to whether or not he needs to be incarcerated because he's dangerous.
>
> That is not an easy call under these circumstances. ***
>
> But at this point it's questionable whether or not he needs to be incarcerated because he's dangerous."

Although the court was ambivalent as to whether defendant was dangerous enough to imprison, the court did not appear to be ambivalent about other rationales for imprisoning him, namely, to accomplish justice, to deter others, and to prevent the offense of failure to register as a sex offender from being regarded as less serious than it is.

¶ 49 Second, defendant argues his nonviolent conduct was not egregious enough to warrant 58 months' imprisonment. But *every* failure to register as a sex offender is nonviolent. It is a nonviolent offense. Nevertheless, in the opinion of the legislature, 58 months' imprisonment is within the range of a fitting punishment for this offense. See 730 ILCS 150/10(a) (West 2010); 730 ILCS 5/5-4.5-40(a) (West 2010).

¶ 50        Third, defendant claims that "the prosecutor's recommendations of 36 to 48 months' prison time," while not binding on the trial court (*People v. Stidham*, 178 Ill. App. 3d 643, 648 (1989)), "provide a useful indicator that the lower court's imposed sentence of 58 months was inappropriately severe." Defendant cites no authority for that claim, which is hard to square with what we said in *People v. Nussbaum*, 251 Ill. App. 3d 779, 782-83 (1993): "[T]his court's analysis of whether the trial court abused its discretion in its sentencing will *** not be affected by the sentences the parties recommended to the trial court. *** We hold that counsels' recommendations are deserving of whatever weight the sentencing court wishes to accord them and nothing more."

¶ 51        Fourth, defendant points out that his criminal history "consisted of traffic or property offenses that were over ten years old." While this is accurate, the trial court had to consider his habits, mentality, and general moral character (see *People v. Calhoun*, 404 Ill. App. 3d 362, 385 (2010)), and arguably, 14 convictions of driving while one's driver's license is suspended reveal a contemptuous attitude toward the law. Also, the age of the previous convictions could be explainable partly by his long imprisonment for predatory criminal sexual assault of a child, during which he was under the supervision of correctional officers.

¶ 52        Fifth, there were some mitigating factors, namely, defendant's guilty plea, his admission of the petition to revoke probation, and his work history. The trial court, however, explicitly took those factors into account, and if the trial court decided they deserved only a little weight, we do not see how we could rightfully gainsay the trial court in that regard. See *Alexander*, 239 Ill. 2d at 213; *Coleman*, 166 Ill. 2d at 261-62.

¶ 53    In sum, when we consider defendant's criminal history together with his failure to attend the court-ordered sex offender risk assessment, we are unable to say the trial court abused its discretion by imposing a statutorily authorized sentence of 58 months' imprisonment.

¶ 54                    B. Imposition of Fines

¶ 55    The State points out that some of the assessments the circuit clerk imposed on defendant are fines. The State cites *People v. Williams*, 2013 IL App (4th) 120313, ¶¶ 18, 21, for the proposition that $10 for the "Arrestee's Medical" (730 ILCS 125/17 (West 2008)) and $10 for "St Police Services" (705 ILCS 105/27.3a(1.5), (5) (West 2010)) are fines. The State cites *People v. Rexroad*, 2013 IL App (4th) 110981, ¶ 53, for the proposition that $5 for the "Drug Court Program" is a fine as well because defendant did not participate in the drug court. The State observes that the circuit clerk lacks authority to impose fines, as the appellate court held more than 25 years ago and has continued holding ever since. See *People v. Chester*, 2014 IL App (4th) 120564, ¶ 33 (citing cases).

¶ 56    Recently in *People v. Nelson*, 2016 IL App (4th) 140168, ¶ 25, we reiterated that "[t]he imposition of fines is a judicial act" and "[c]ircuit clerks have no authority to impose fines, even those that are mandatory." Further, we stated "[f]ines imposed by circuit clerks are 'void from their inception.' " *Nelson*, 2016 IL App (4th) 140168, ¶ 25 (quoting *People v. Alghadi*, 2011 IL App (4th) 100012, ¶ 20). Defendant agrees with the State's position. Therefore, we vacate the fines at issue (the "Arrestee's Medical" fine, the "St Police Services" fine, and the "Drug Court Program" fine) and remand for the imposition of mandatory fines and a determination of the credit to which defendant is entitled.

¶ 57    The State further argues that because the fine in the amount of $255 for "Sexual Offender Reg"—imposed by the trial court—is less than the minimum fine of $500 required by

the statute (730 ILCS 150/10(a) (West 2008)), that fine is void as well (see *People v. Montiel*, 365 Ill. App. 3d 601, 605-06 (2006)). It asks this court to remand the matter for imposition of a fine in the increased amount of $500. However, after reconsidering the matter in light of *Castleberry*, we disagree with the State's position and find that (1) the challenged fine is voidable rather than void and (2) the State lacked authority to request an increase in the amount of the fine imposed.

¶ 58    First, in *Castleberry*, 2015 IL 116916, ¶ 1, the supreme court abolished "the 'void sentence rule,' which states that '[a] sentence which does not conform to a statutory requirement is void' " (quoting *People v. Arna*, 168 Ill. 2d 107, 113 (1995)). It noted that, where a court lacks jurisdiction, any resulting judgment is void and may be attacked at any time. *Castleberry*, 2015 IL 116916, ¶ 11. By contrast, a voidable judgment " 'is one entered erroneously by a court having jurisdiction and is not subject to collateral attack.' " *Castleberry*, 2015 IL 116916, ¶ 11. The court explained the rationale behind the "void sentence rule" as follows:

> "[O]ur cases have at times also held 'that the power to render the
> particular judgment or sentence is as important an element of juris-
> diction as is personal jurisdiction and subject matter jurisdiction.'
> [Citation.] Based on this idea, the rule has developed which holds
> that a circuit court which violates a particular statutory requirement
> when imposing a sentence acts without 'inherent authority' or
> 'inherent power.' And, because the court has acted without power,
> it has acted without jurisdiction, thereby rendering the sentence
> void. Thus, the void sentence rule is stated: 'A sentence which

does not conform to a statutory requirement is void.' [Citation.]"

*Castleberry*, 2015 IL 116916, ¶ 13.

¶ 59        In abolishing the "void sentence rule," the supreme court concluded that although " 'the legislature can create new justiciable matters by enacting legislation that creates rights and duties, the failure to comply with a statutory requirement or prerequisite does not negate the circuit court's subject matter jurisdiction or constitute a nonwaivable condition precedent to the circuit court's jurisdiction.' " *Castleberry*, 2015 IL 116916, ¶ 15.  Therefore, pursuant to *Castleberry*, a failure by the trial court to comply with statutory requirements when imposing a fine does not result in a void judgment that is subject to attack at any time.  Rather, the court's judgment would be voidable, having been entered erroneously by a court with jurisdiction.  For those reasons, we reject the State's position that the $255 "Sexual Offender Reg" fine imposed by the court was void.

¶ 60        Second, *Castleberry* held that an appellate court may not "address a request by the State to increase a criminal sentence which is illegally low." *Castleberry*, 2015 IL 116916, ¶ 26.  Initially, the supreme court stated that, under its rules, the State was not permitted to appeal or cross-appeal a sentencing order.  *Castleberry*, 2015 IL 116916, ¶ 21 (citing Illinois Supreme Court Rule 604(a) (eff. July 1, 2006)).  Moreover, the court held that, as an appellee in the matter, the State could "raise any argument of record in support of the circuit court's judgment" but could not attack the court's judgment with a view toward enlarging its own rights or lessening the defendant's rights.  *Castleberry*, 2015 IL 116916, ¶ 22.  With respect to the case before it, the court stated as follows:

> "The State's argument in the appellate court that the 15-year
>
> enhancement should be applied to [the] defendant's sentence was

not brought to sustain the judgment of the circuit court. It was, instead, a new and different issue brought with a view to 'lessening the rights' of [the] defendant. The State's argument was a *de facto* cross-appeal challenging defendant's sentence and, as such, was impermissible." *Castleberry*, 2015 IL 116916, ¶ 23.

¶ 61    A similar factual situation is presented in the case at bar. Here, the State, as an appellee, sought to increase a fine imposed by the trial court rather than merely sustain the court's judgment. Thus, its argument was a *de facto* cross-appeal and impermissible. As a result, we make no order with respect the $255 "Sexual Offender Reg" fine imposed by the trial court.

¶ 62                              III. CONCLUSION

¶ 63    For the foregoing reasons, we vacate the fines labeled "Arrestee's Medical," "St Police Services," and "Drug Court Program," and we remand the case to the trial court with directions to impose the mandatory fines and apply any credit to which defendant is entitled. We otherwise affirm the trial court's judgment.

¶ 64    Affirmed in part and vacated in part; cause remanded with directions.